

Exhibit B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.,** | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Re: D.I. 30** |

**ORDER PURSUANT TO SECTIONS 105, 363, 364, 365 AND 541 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, 6006 AND 9007 AND DEL. BANKR. L.R. 2002-1 AND 6004-1 (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT, ASSIGNMENT OR REJECTION OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING FORMS AND MANNER OF NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION THEREWITH; AND (E) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for an Order Pursuant To Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All Assets of Debtor; (B) Approving Procedures for the Assumption and Assignment, Assignment or Rejection of Designated Executory Contracts and Unexpired Leases;(C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief* (the "Motion");[2] and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion or Bidding Procedures (as defined below), as applicable.


1910844190501000000000008

States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the statements of counsel, the First Day Declaration, any objections raised, and the evidence presented at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtor's bankruptcy estate, its creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Debtor has articulated good and sufficient reasons for, and the best interests of its estate, creditors, and other parties in interest will be served by the Court granting the relief requested in the Motion to be approved pursuant to this Bidding Procedures Order.

B.      Under the circumstances, and particularly in light of the extensive marketing done by the Debtor and its advisors of the Purchased Assets prior to the date hereof, the Bidding Procedures enable the Debtor to maximize the value of its assets for the benefit of all stakeholders and constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit bids, and are reasonably calculated to enable the Debtor to pursue higher or otherwise better offers for the Purchased Assets.

C.      The Debtor's option to accept a Stalking Horse Bid in the Debtor's business judgment (upon consultation with the DIP Lender and the Committee) and, upon such designation and after consultation with the DIP Lender and the Committee, seek Bankruptcy Court approval of any Bid Protections on an emergency basis are reasonably calculated to enable the Debtor to further maximize the value of its assets by providing the opportunity to set the floor for bids and contributing to a robust auction process, for the benefit of the Debtor's estate, creditors, and other parties in interest.

2

D.      The Debtor's estate will suffer harm if the relief requested in the Motion to be approved by this Bidding Procedures Order is not granted.

E.      The Debtor has articulated good and sufficient reasons for, and the best interests of its estate and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this Bidding Procedures Order for the (i) Bid Deadline (as defined below), (ii) Sale Objection Deadline (as defined below), (iii) Auction, (iv) Assignment Objection Deadline, and (v) Sale Hearing.

F.      The Sale Notice and Assignment and Rejection Notice are reasonably calculated to provide the Sale Notice Parties, the other Contract Counterparties, and other interested parties with proper notice of the (i) Bidding Procedures, (ii) Auction, (iii) Assignment and Rejection Procedures (including with respect to Cure Costs and the Assignment Objection Deadline), (iv) Sale Hearing, and (v) Sale.

G.      The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

H.      Due, sufficient and adequate notice of the relief granted herein has been given to all parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

2.      The Bidding Procedures, which are attached hereto as **Exhibit 1** and incorporated herein by reference, are hereby approved in all respects and shall govern all bidders and bids, including those that may be submitted by Qualified Bidders at the Auction.

3.      Qualified Bidders seeking to submit bids for the Purchased Assets must do so in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order.

4.      As set forth in the Bidding Procedures, the Debtor has the option, but is not required to, designate a Stalking Horse Bidder in the Debtor's business judgment (in consultation with the DIP Lender and the Committee) up to and including seven (7) days prior to the Bid Deadline.  Notwithstanding anything to the contrary in the Bidding Procedures or this Bidding Procedures Order, if the Debtor designates a Stalking Horse Bidder, the Debtor shall within one (1) day thereof, deliver to AP3-SF2 South, LLC (the "Landlord") the required adequate assurance of future performance information received from the Stalking Horse Bidder under Section III of the Bidding Procedures, and the Landlord shall have until the Assignment Objection Deadline to object to (i) the amount of cure proposed to be paid to the Landlord in connection with the assumption and assignment of any unexpired lease entered into between the Debtor and Landlord, if any, and (iii) the adequacy of the adequate assurance of future performance provided by the Stalking Horse Bidder.

5.      To the extent the Debtor designates a Stalking Horse Bidder, the Debtor shall within one (1) day thereof file the Stalking Horse Bidder Notice and, upon consultation with the DIP Lender and the Committee, seek Bankruptcy Court approval of any Bid Protections on an emergency basis.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement, which competing Qualified

4

Bidders must then use as the basis to submit their Qualified Bids, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

6.    Notwithstanding that it may contain terms and conditions which may be inconsistent with the requirements for a Qualified Bid or other provisions of the Bidding Procedures, but subject to any applicable consent rights of the DIP Lender, if the Debtor accepts a Stalking Horse Bid, such Stalking Horse Bid shall be deemed to constitute a Qualified Bid and such Stalking Horse Bidder shall be deemed to be a Qualified Bidder; provided, that the Debtor may not accept any bid without consulting the DIP Lender and the Committee.

7.    The deadline for all competing bidders to submit a Qualified Bid (other than a Stalking Horse Bid) is May 29, 2019, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"), as further governed by the Bidding Procedures. Notwithstanding anything to the contrary in the Bidding Procedures or this Bidding Procedures Order, with respect to each Qualified Bid received by the Bid Deadline, the Debtor shall within one (1) day following the Bid Deadline, deliver to the Landlord the required adequate assurance of future performance information received by from each such Qualified Bidder under Section III of the Bidding Procedures, and the Landlord shall have until the Auction Objection Deadline to (i) object to the outcome of the Auction, (ii) the amount of any cure proposed to be paid to the Landlord in connection with the assumption and assignment of any unexpired lease entered into between the Debtor and Landlord, if any, and (iii) the adequacy of the adequate assurance of future performance provided by any Qualified Bidder.

8.    As further governed by the Bidding Procedures, if more than one Qualified Bid is received by the Bid Deadline, the Debtor will hold the Auction on June 3, 2019, at 10:00 a.m.

(prevailing Pacific Time) in accordance with the Bidding Procedures at the offices of Hogan Lovells US LLP, 4085 Campbell Ave #100, Menlo Park, CA 94025.

9.     Promptly following the conclusion of the Auction (and not later than one (1) days thereafter), the Debtor shall promptly file with the Court the Supplement described in the Bidding Procedures, but shall not be required to serve the same on any parties-in-interest in this Chapter 11 Case; provided, that the Debtor shall consult with the DIP Lender and the Committee prior to filing the Supplement.

10.     If the Debtor receives only one (1) Bid that is a Qualified Bid (which may be a Stalking Horse Bid, as applicable), the Debtor, in its business judgment upon consultation with the DIP Lender and the Committee, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement (or the Stalking Horse Bidder Purchase Agreement, as applicable).

11.     The Debtor shall obtain entry of the Sale Order no later than June 6, 2019. Following the conclusion of the Auction, with the consent of the Successful Bidder and subject to the Milestones (as defined in the interim and final orders, as applicable, authorizing the Debtor to obtain post-petition financing (the "DIP Order")), or as otherwise approved by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for this Chapter 11 Case.  At the Sale Hearing, the Debtor shall present the Successful Bid to the Bankruptcy Court for approval.

12.    The Debtor is hereby authorized to conduct the Sale without the necessity of complying with any state or local transfer laws or requirements.

13.    The Sale Notice and Assignment and Rejection Notice substantially in the forms attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, to this Bidding Procedures Order, are approved in all respects.  No other or further notice of the Bidding Procedures, Assignment and Rejection Procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale is required.

14.    To be considered, any objection to the Sale for all issues other than the outcome of the Auction must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before May 30, 2019, at 5:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline").  Any objections to the outcome of the Auction must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before June 5, 2019, at 12:00 p.m. (prevailing Eastern Time) (the "Auction Objection Deadline").

15.    The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtor, or the consummation and performance of the Sale of the Purchased Assets to the Successful Bidder, including the transfer of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Purchased Assets, subject to the rights and defenses of the Debtor and the Debtor's estate with respect thereto), and the Debtor's assumption and assignment of the Transferred Contracts to the Successful Bidder; provided, however, any

party in interest may raise an objection to the outcome of the Auction on or before the Auction Objection Deadline.

16.     No Qualified Bidder or any other person or entity, other than a potential Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment in connection with the Sale.

17.     The Assignment and Rejection Procedures, as described in the Motion, are hereby approved in all respects. The failure to specifically include or reference any particular provision of the Assignment and Rejection Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Assignment and Rejection Procedures be authorized and approved in their entirety.

18.     As further governed by the Assignment and Rejection Procedures, the Assignment Objection Deadline is May 30, 2019, at 5:00 p.m. (prevailing Eastern Time). If a timely objection is filed and cannot be resolved consensually, such objection will be resolved at a hearing to be held on June 6, 2019, or on such other date prior to or after the Sale Hearing as the Court may designate. Any Contract Counterparty that fails to file an Assignment Objection by the Assignment Objection Deadline in accordance with the Assignment and Rejection Procedures (i) shall be deemed to have forever waived and released any right to assert an Assignment Objection, (ii) to have consented to the assumption and assignment, or assignment, as the case may be, of their Transferred Contract without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to the Transferred Contract, (b) seeking additional amounts arising under the Transferred Contract prior to the closing from

the Debtor or Successful Bidder, and (c) objecting to the assumption and assignment, or assignment, as the case may be, of its Transferred Contract to the Successful Bidder.

19.    Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, nothing herein or in the Bidding Procedures shall modify the terms and conditions of the DIP Order in connection with any sales of any assets of the Debtor.  Nothing herein shall amend or modify any provisions, terms, or conditions of the DIP Order or DIP Loan Documents (as defined in the DIP Order), and, without limiting the foregoing, the rights of the DIP Lender and the Prepetition Lender in connection with any sales of the Debtor's assets, including credit bidding rights, are incorporated herein by reference.  If the DIP Lender submits a bid for all or any portion of the Purchased Assets, the DIP Lender shall waive any consultation rights it has with the Debtor under the Bidding Procedures or this Bidding Procedures Order with respect to such Purchased Assets and shall no longer be a Notice Party until the DIP Lender revokes such bid.  The Debtor shall obtain the prior written consent of the DIP Lender prior to the Debtor's acceptance of any bid (including a Stalking Horse Bid, Qualified Bid, Successful Bid or Back-Up Bid) that provides for less than $30 million of cash proceeds at the closing thereof; provided, however, that notwithstanding anything herein to the contrary, the Committee shall have the right at any time, including during the Auction, to seek the Court's intervention to the extent that the DIP Lender's exercise or threatened exercise of such consent is being utilized by the DIP Lender to prevent the Debtor from accepting a bid that the Committee believes to be "higher and better" (and the rights of all parties to oppose such relief are fully reserved).

20.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.  Notwithstanding anything to the contrary in the

Bidding Procedures or this Bidding Procedures Order, the Landlord shall have until the Auction

Objection Deadline to object to the applicability of Bankruptcy Rules 6004(h) or 6006(d) to the

Sale Order.

21.    The Debtor is authorized and empowered to take such steps, expend such sums of

money and do such other things as may be necessary to implement and effectuate the terms and

requirements established and relief granted in this Bidding Procedures Order.

22.    To the extent of any inconsistences between the Bidding Procedures and this

Bidding Procedures Order, this Bidding Procedures Order shall govern.

23.    The Court shall retain jurisdiction over any matter or dispute arising from or

relating to the Bidding Procedures or this Bidding Procedures Order.

Dated: __May 1__, 2019
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**Bidding Procedures**

## BIDDING PROCEDURES

The following procedures (collectively, the "Bidding Procedures") shall govern the proposed sale (the "Sale") of all or substantially all of the Debtor's assets (collectively, the "Purchased Assets")[1] and the assumption of certain of the Debtor's liabilities (collectively, the "Assumed Liabilities") of Achaogen, Inc. (the "Debtor") in Case No. 19-10844 (BLS) (the "Chapter 11 Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Purchased Assets and Assumed Liabilities will be set forth in a form asset purchase agreement (the "Form Purchase Agreement"), or if the Debtor designates a Stalking Horse Bidder (as defined below) upon consultation with the DIP Lender and the official committee of unsecured creditors (the "Committee"), and with Bankruptcy Court approval, the asset purchase agreement of such Stalking Horse Bidder (the "Stalking Horse Bidder Purchase Agreement"), and made available to Potential Bidders (as defined below) as set forth herein.

These Bidding Procedures have been approved and authorized by an order of the Bankruptcy Court, dated April 30, 2019 (Docket No. __) (the "Bidding Procedures Order"), upon the motion of the Debtor dated April 15, 2019 (Docket No. 30) (the "Sale Motion"), which Bidding Procedures Order, among other things, (i) approved these Bidding Procedures; (ii) approved various forms and the manner of notice of respective dates, times, and places in connection therewith; (iii) scheduled the Auction (as defined below); (iv) scheduled the Sale Hearing (as defined below) and the objection deadline to the Sale; and (v) approved procedures for the assumption and assignment or rejection of designated executory contracts, including related objection deadlines and the bar date for submitting a rejection damages claim; and (vi) approved procedures for the rejection of designated executory contracts, including the bar date for submitting a rejection damages claim. In the event of a conflict between the terms of these Bidding Procedures and the terms of the Bidding Procedures Order, the terms of the Bidding Procedures Order shall control.

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) after a confidentiality agreement has been executed and delivered to the Notice Parties (as defined below), a copy of the Form Purchase Agreement, or if a Stalking Horse Bidder is designated, the Stalking Horse Bidder Purchase Agreement, kindly submit a request in writing (email and facsimile requests are acceptable) to (a) the Debtor's counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne and Erin N. Brady (Telephone: (310) 785-4600; email: richard.wynne@hoganlovells.com and erin.brady@hoganlovells.com) or Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn: Christopher R. Bryant and John D. Beck (Telephone: (212) 918-3000; email: chris.bryant@hoganlovells.com and john.beck@hoganlovells.com) or Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott and Andrew R. Remming (Telephone: (302) 658-9200; email: dabbott@mnat.com and aremming@mnat.com) and/or (b) the Debtor's financial advisor: Cassel Salpeter & Co., LLC, 801 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: James S. Cassel and Philip Cassel, (Telephone: (305) 438-7700; email: jcassel@cs-ib.com and pcassel@cs-

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order and any exhibits thereto, and, if not defined therein, in the Sale Motion and any exhibits thereto.

ib.com).    Additionally, the Sale Motion and the exhibits thereto are available at www.kccllc.net/achaogen.

## Key Dates

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtor and to submit competing bids for the Assets. The Debtor shall assist interested parties in conducting their respective due diligence investigations and shall accept Bids until **May 29, 2019 at 4:00 p.m. (prevailing Eastern Time)**.

The key dates for the sale process are as follows:[2]

| | |
|---|---|
| No later than fifteen (15) days before the Bid Deadline | Deadline for Potential Bidders to request Debtor put them in touch with parties that have expressed an interest in financing a transaction involving the Debtor's assets. |
| May 22, 2019 at 4:00 p.m. (prevailing Eastern Time) | Deadline for Debtor to designate a Stalking Horse Bidder (if any), file Stalking Horse Purchase Agreement and seek Bankruptcy Court approval of Bid Protections for a Stalking Horse Bidder. |
| May 22, 2019 at 4:00 p.m. (prevailing Eastern Time) | Deadline to file form of Sale Order. |
| May 29, 2019 at 4:00 p.m. (prevailing Eastern Time) | Bid Deadline – Due Date for Bids and Good Faith Deposits. |
| May 30, 2019 at 5:00 p.m. (prevailing Eastern Time) | Assignment Objection Deadline. |
| May 30, 2019 at 5:00 p.m. (prevailing Eastern Time) | Sale Objection Deadline (for all objections other than the outcome of the Auction). |
| May 31, 2019 at 4:00 p.m. (prevailing Eastern Time) | Debtor to determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder. |
| On or before June 2, 2019 at 4:00 p.m. (prevailing Eastern Time) | Debtor to send to each Qualified Bidder a schedule setting forth (i) the highest or otherwise best fully binding offer for all or substantially all of the Purchased Assets; and/or (ii) the highest or otherwise best fully binding offer(s) for all or any portion or combination of the Purchased Assets. |
| June 3, 2019 at 10:00 a.m. (prevailing Pacific Time) | Auction (if necessary), which will be held at the offices of Hogan Lovells US, LLP, 4085 Campbell Ave #100, Menlo Park, CA 94025. |
| June 4, 2019 at 4:00 p.m. | Deadline for Debtor to file supplement informing Bankruptcy |

---

[2] These dates are subject to extension or adjournment as provided for herein.

2

| (prevailing Eastern Time) | Court of the results of the Auction. |
| June 5, 2019 at 12:00 p.m. (prevailing Eastern Time) | Auction Objection Deadline (for all objections with respect to the outcome of the Auction). |
| June 6, 2019 | Proposed Sale Hearing Date. |
| June 21, 2019 | Deadline to Closing Proposed Sale Transaction. |

## I.    Due Diligence

The Debtor will afford interested parties that have or put in place an executed, unexpired confidentiality agreement in form and substance acceptable to the Debtor and, at the Debtor's request, financial information that demonstrates such party's ability to submit a bid that complies with the requirements herein and the Bidding Procedures Order (each, a "Potential Bidder"), the opportunity to conduct reasonable due diligence, subject to parameters and restrictions that the Debtor deems appropriate upon consultation with the DIP Lender and the Committee.  The due diligence period shall extend through and include the Bid Deadline. Further, any such Potential Bidders who would like to be connected with potential financing sources shall inform the Debtor of such interest no later than fifteen (15) days before the Bid Deadline.

Neither the Debtor nor its advisors shall be obligated to furnish any information of any kind whatsoever relating to the Debtor's assets or liabilities, the Debtor's contracts, or the Debtor to any person or entity (i) that is not a Potential Bidder or Qualified Bidder (as defined below), (ii) that is not in compliance with the requirements set forth herein and in the Bidding Procedures Order or (iii) after the Bid Deadline (as defined below).

To the extent these Bidding Procedures require the Debtor to consult with the DIP Lender and/or the Committee in connection with making a determination or taking an action, or in connection with any other matter related to the Bidding Procedures or the Auction, the Debtor shall do so in a regular and timely manner prior to making such determination or taking such action.

## II.    Bid Deadline

All Potential Bidders must deliver bids for the Purchased Assets (each a "Bid"), so as to be received on or before 4:00 p.m. (prevailing Eastern Time), on May 29, 2019 (the "Bid Deadline"), to the Debtor's financial advisor: Cassel Salpeter & Co., LLC, 801 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: James S. Cassel and Philip Cassel, email: jcassel@cs-ib.com, pcassel@cs-ib.com, with copies provided contemporaneously to (i) counsel to the Debtor: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne and Erin N. Brady (Telephone: (310) 785-4600; email: richard.wynne@hoganlovells.com and erin.brady@hoganlovells.com) or Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn: Christopher R. Bryant and John D. Beck (Telephone: (212) 918-3000; email: chris.bryant@hoganlovells.com and john.beck@hoganlovells.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott and Andrew R.

Remming (Telephone: (302) 658-9200; email: dabbott@mnat.com and aremming@mnat.com); (ii) counsel to Silicon Valley Bank, N.A., in its capacity as a prepetition lender and DIP lender, under the Debtor's debtor-in-possession financing facility, Morrison & Foerster LLP, 200 Clarendon St., Boston, MA 02116, Attn: Alexander Rheaume (Telephone (617) 648-4770, email: arheaume@mofo.com) and Morrison & Foerster LLP, 250 West 55th St., New York, NY 10019, Attn: Todd M. Goren and/or Benjamin W. Butterfield (Telephone: (212) 468-8000, email: bbutterfield@mofo.com and/or tgoren@mofo.com); and (iii) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10024, Attn: Arik Preis and Allison Miller (Telephone: (212) 872-1000; email: apreis@akingump.com and amiller@akingump.com) (collectively, the "Notice Parties").

## III.    Qualified Bidder Requirement

In order to qualify as a Qualified Bidder and participate in the Auction, each Potential Bidder must (unless waived by the Debtor in consultation with the DIP Lender and the Committee) deliver to the Notice Parties the most current audited (if available) and the latest unaudited financial statements and/or such other financial information evidencing the Potential Bidder's ability to (a) close the Sale within the time period prescribed in the Bidding Procedures Order and Form Purchase Agreement and (b) provide adequate assurance of future performance to counterparties to Transferred Contracts to be assumed and assigned to the Potential Bidder. In addition, unless waived by the Debtor in consultation with the DIP Lender and the Committee, if the Potential Bidder is an entity formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, the Potential Bidder must deliver to the Notice Parties current audited (if available) and the latest unaudited financial statements and/or such other relevant financial information as may be requested by the Debtor of each equity holder of such Potential Bidder, *which equity holders must also guarantee the obligations of such Potential Bidder on terms reasonably acceptable to the Debtor*, evidencing the Potential Bidder's ability to (i) close the Sale within the time period prescribed in the Bidding Procedures Order and Form Purchase Agreement (or Stalking Horse Bidder Purchase Agreement, as applicable) and (ii) provide adequate assurance of future performance to counterparties to Transferred Contracts to be assumed and assigned to the Potential Bidder.

The Debtor, in consultation with the DIP Lender and the Committee, shall determine whether a Potential Bidder has complied with the foregoing requirements and is qualified to participate in the Auction (each such Potential Bidder, a "Qualified Bidder"), and the Debtor shall provide prompt written notice of such determination to each such Potential Bidder; provided, that, the Debtor may waive any of the foregoing requirements in the Debtor's reasonable discretion in consultation with the DIP Lender and the Committee; provided, further, if the DIP Lender submits a bid for all or any portion of the Purchased Assets, the DIP Lender shall waive any consultation rights it has with the Debtor under these Bidding Procedures or the Bidding Procedures Order with respect to such Purchased Assets and shall no longer be a Notice Party until the DIP Lender revokes such bid.

The Debtor may request additional information from a Potential Bidder or Qualified Bidder at any time prior to the Sale closing in order to evaluate such bidder's ability to bid at the Auction over and above its initial offer in its Qualified Bid, consummate the Sale, and fulfill its obligations in connection therewith. Each Potential Bidder or Qualified Bidder shall be

obligated to provide such additional information within two (2) Business Days of receiving such requests as a condition to participating further in the Auction and Sale processes; provided, however, that additional information requests made by the Debtor during the Auction in connection with a Qualified Bidder's ability to continue to bid at the Auction over and above its initial offer in its Qualified Bid shall, in the Debtor's reasonable discretion in consultation with the DIP Lender and the Committee, be satisfied prior to such Qualified Bidder submitting any further bids at the Auction.  The failure to comply with such requests shall disqualify such Potential Bidder or Qualified Bidder.

For purposes of these Bidding Procedures, the Stalking Horse Bid, if any, shall be deemed to constitute a Qualified Bid and the Stalking Horse Bidder, if any, shall be deemed to be a Qualified Bidder, as applicable. Notwithstanding anything to the contrary contained herein, but subject to any applicable consent rights of the DIP Lender, the Debtor shall be permitted, so long as a bid is otherwise a Qualified Bid, to select any such bid as a Stalking Horse Bid, upon consultation with the DIP Lender and the Committee, and upon notice and a hearing as set forth in the order approving these Bidding Procedures.

## IV.   Requirements of a Qualified Bid

A "Qualified Bid" shall mean a bid submitted by a Qualified Bidder that:

A. Is made in writing;

B. Is submitted prior to the Bid Deadline;

C. Designates which of the Purchased Assets the Qualified Bidder proposes to purchase; provided, however, that in the event that the Debtor receives one or more Qualified Bids for less than all of the Purchased Assets, the Debtor, in consultation with the DIP Lender and the Committee, may request that Qualified Bidders provide a purchase price allocation for those Purchased Assets they have designated.

D. Designates which of the Assumed Liabilities the Qualified Bidder proposes to assume;

E. Designates which of the Transferred Contracts the Qualified Bidder proposes to have assumed and assigned to it and which Transferred Contracts it wishes the Debtor to reject, if it is the Successful Bidder (as defined below), or the Debtor's rights and interests therein sold and transferred, as the case may be;

F. Includes a binding, definitive and fully executed asset purchase agreement which (a) shall be based off the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable, and marked to reflect only those changes required as a condition of such Qualified Bidder's to closing the Sale, (b) shall not contain any provisions entitling such Qualified Bidder to any break-up fee, expense reimbursement or other bid protections of any kind, and (c) waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of the bid or participation in any auction.  An asset

purchase agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures, shall be referred to herein as a "Qualified Bidder Purchase Agreement".

G. To the extent a bid is for assets that are subject to a Stalking Horse Bid (if any), the value of the purchase price included in such bid, in the reasonable view of the Debtor in consultation with the DIP Lender and the Committee, must equal at least the value of the purchase price set forth in such Stalking Horse Bid plus the amount of the Bid Protections provided to such Stalking Horse Bidder, as set forth in the Stalking Horse Bidder Notice describing such Stalking Horse Bid, plus the Overbid Amount (as defined below);

H. Provides that the purchase price shall be paid in full in cash and/or non-cash consideration at the closing of the Sale; provided, however, that the value of any non-cash consideration shall be determined by the Debtor in consultation with the DIP Lender and the Committee;

I. Provides a good faith cash deposit (the "Good Faith Deposit") equal to 10% of the value of the Qualified Bidder's total bid price. The Good Faith Deposit shall be paid by wire transfer to a segregated account at US Bank, National Association as escrow agent, or such other escrow agent to be designated by the Debtor, pursuant to instructions to be provided upon request by a Qualified Bidder. The Debtor reserves the right to increase, decrease or waive the Good Faith Deposit for one or more Qualified Bidders in consultation with the DIP Lender and the Committee. Such Qualified Bidder's Qualified Bidder Purchase Agreement shall provide that the Good Faith Deposit shall be forfeited to the Debtor in the event of a breach thereof (after giving effect to any applicable notice and cure periods) by such Qualified Bidder;

J. Provides that such bid shall be open and irrevocable until the earlier of:

   1. such bid being determined by the Debtor not to be a Qualified Bid;

   2. if such bid is not chosen by the Debtor at the Auction to be the Successful Bid or Back-Up Bid (as each such term is defined below), the date of entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder;

   3. if such bid is chosen by the Debtor to be the Successful Bid, the date which is the earlier to occur of: (i) the closing of the Sale to such Successful Bidder, and (ii) five (5) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a final, non-appealable order ("Final Order");

   4. if such bid is chosen by the Debtor to be the Back-Up Bid, the date which is the earlier to occur of: (i) the date of closing on the Sale to the Successful Bidder, and (ii) twenty-five (25) Business Days following the date the order

6

approving the Sale to the Successful Bidder shall have become a Final Order; provided, that if the Successful Bidder shall fail to close on its purchase of the Purchased Assets during the period set forth above, (x) the Back-Up Bid shall continue to remain open and irrevocable, (y) the Back-Up Bidder shall be deemed to be the Successful Bidder, and (z) it shall close on the Sale within ten (10) Business Days of becoming the Successful Bidder;

K. (i) Includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct all due diligence regarding the Debtor's assets prior to submitting its bid and that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid, and (ii) confirms the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the Sale and does not include any due diligence contingencies;

L. Does not contain any financing contingencies or any other contingencies or termination rights not set forth in the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable;

M. Provides evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) evidencing the authority of the Qualified Bidder to make a binding and irrevocable Qualified Bid and to consummate the Sale if such Qualified Bidder is the Successful Bidder or Back-Up Bidder, as such bid may be improved prior to or at the Auction;

N. Confirms that the Sale will be completed in accordance with the timing set forth in the Bidding Procedures Order;

O. If the Qualified Bidder was formed in whole or part for the purpose of acquiring all or part of the Purchased Assets, provides evidence which is reasonably satisfactory to the Debtor, from each of the equity holders of such Qualified Bidder demonstrating that such Qualified Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Successful Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body);

P. Certifies that the Qualified Bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale; except that the Debtor may facilitate a submission of a Qualified Bid by one or more unrelated Qualified Bidders;

Q. Is not conditioned on the receipt of any third party approvals or consents (excluding required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than third party approvals or consents that are deemed reasonable, as determined by the Debtor in consultation with the DIP Lender and the Committee; and

R. Sets forth the representatives that are authorized to appear and act on behalf of such Qualified Bidder in connection with the proposed transaction and the Auction.

All Qualified Bids will be considered by the Debtor (in consultation with the DIP Lender and the Committee). Any bids other than Qualified Bids will not be considered. The Debtor, in accordance with its fiduciary duties to the estate, may evaluate bids on numerous grounds, including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtor. For the avoidance of doubt, the presence of any governmental, licensing, regulatory or other approvals or consents in a bid or other contingencies, and the anticipated timing or likelihood of obtaining such approvals or consents or resolving such contingencies, may be grounds for the Debtor to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

Additionally, notwithstanding the foregoing, but subject to any applicable consent rights of the DIP Lender, the Debtor (in consultation with the DIP Lender and the Committee) reserves its rights to waive any of the aforementioned requirements and consider any Potential Bidder to be a Qualified Bidder.

## V.      Receipt of Qualified Bids

If the Debtor receives only one (1) Bid that is a Qualified Bid for all the assets, the Debtor, in its business judgment in consultation with the DIP Lender and the Committee, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.

If the Debtor receives two (2) or more Qualified Bids for the same group of assets, the Debtor will conduct an auction (the "Auction").

## VI.     Stalking Horse and Bid Protections

The Debtor is authorized, but not obligated, pursuant to the Bidding Procedures Order, to designate a Qualified Bidder as a stalking horse bidder (the "Stalking Horse Bidder") in the Debtor's business judgment (in consultation with the DIP Lender and the Committee) up to and including seven (7) days prior to the Bid Deadline without the necessity of a further hearing or authorization of the Court. Any Qualified Bid submitted by a Stalking Horse Bidder, a "Stalking Horse Bid".

The Debtor, upon the designation of a Stalking Horse Bidder, shall, in the Debtor's business judgment (in consultation with the DIP Lender and the Committee), seek Bankruptcy Court approval on an emergency basis to agree to (i) pay the Stalking Horse Bidder a percentage of the purchase price set forth in its Qualified Bidder Purchase Agreement (but not as such purchase price may be increased at the Auction) for the Purchased Assets as a break-up fee (the "Break-up Fee"); and (ii) reimburse the Stalking Horse Bidder in a certain amount for its actual and documented third-party fees and costs incurred in connection with its Qualified Bid (the

"Expense Reimbursement", and together with the Break-up Fee, the "Bid Protections"), in the event the Stalking Horse Bidder is not the Successful Bidder at the Auction, if the Debtor determines in the exercise of its business judgment (in consultation with the DIP Lender and the Committee) that granting the Bid Protections is in the best interests of the Debtor's estate and creditors. To the extent the Debtor designates a Stalking Horse Bidder in the Debtor's business judgment (in consultation with the DIP Lender and the Committee), the Debtor shall within one (1) day thereof file a notice of such determination with the Bankruptcy Court (the "Stalking Horse Bidder Notice") and seek Bankruptcy Court approval of any Bid Protections on an emergency basis. The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement. Competing Qualified Bidders must then use the Stalking Horse Bidder's Qualified Bidder Purchase Agreement as the basis to submit their Qualified Bids, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

## VII.    Auction Process

**The Auction, if any, will take place at the offices of Hogan Lovells US, LLP, 4085 Campbell Ave #100, Menlo Park, CA 94025, on June 3, 2019, commencing at 10:00 a.m. (prevailing Pacific Time).**

If the Debtor proceeds with the Auction, the following rules and procedures shall apply (subject to Article XII hereof):

A.    Prior to the Auction, in consultation with the DIP Lender and the Committee, the Debtor will select the highest or otherwise best Qualified Bid it has received to serve as the opening bid at the Auction, which may be a Stalking Horse Bid (the "Baseline Bid");

B.    As soon as practicable and no later than one (1) day prior to the commencement of the Auction, the Debtor will provide all Qualified Bidders (including by email or telefax) with a written notice identifying all of the Qualified Bidders and which Qualified Bid has been chosen as the Baseline Bid. To the extent the Qualified Bidder is not a Stalking Horse Bid, the Debtor will also provide to all Qualified Bidders a copy of the purchase agreement of the highest and otherwise best bid concurrently with delivery of the written notice;

C.    Only a Qualified Bidder, and its representatives and advisors, who has submitted a Qualified Bid shall be eligible to make any subsequent bids at the Auction. Each Qualified Bidder must appear in person or through a duly authorized representative who has the legal authority to bind the Qualified Bidder at the Auction (and who must provide the Debtor with written evidence of such authority prior to the Auction which is reasonably satisfactory to the Debtor), or they shall not be entitled to attend or participate at the Auction. All creditors of the Debtor holding valid claims can attend the Auction; provided, however, any such creditors will need to sign an NDA to attend the Auction and be a Qualified Bidder to participate in the Auction;

D.   All Qualified Bids shall be placed on the record at the Auction, which shall be transcribed, videotaped or audiotaped in the reasonable discretion of the Debtor;

E.   Each Qualified Bidder will have the right to make additional modifications or improvements to its Qualified Bidder Purchase Agreement, that make its bid higher or otherwise better, at any time, prior to, or during, the Auction which are consistent with these Bidding Procedures and the Bidding Procedures Order;

F.   Bidding shall commence at the Baseline Bid. The first overbid at the Auction (the "Minimum Initial Overbid") shall be in an amount not less than (i) the amount of the Baseline Bid plus (ii) $500,000 (the "Overbid Amount"). Thereafter, a Qualified Bidder may increase its Qualified Bid in any amount as long as each subsequent bid (each, a "Subsequent Overbid") exceeds the previous highest bid by at least $250,000 of additional cash and/or non-cash consideration; provided, however, that the value for such non-cash consideration shall be determined by the Debtor in consultation with the DIP Lender and the Committee.

G.   Each bid made by a Qualified Bidder at the Auction must continue to meet, satisfy or comply with the requirements of a Qualified Bid, other than those applicable to the submission of an initial Qualified Bid;

H.   The Auction will continue with each Qualified Bidder submitting additional Subsequent Overbids in each round of bidding, after being advised of the terms of the then highest bid and the identity of the Qualified Bidder who made such bid, in each round of bidding. Each Qualified Bidder must bid in each round or it shall be disqualified from further bidding at the Auction;

I.   The Auction will conclude when the Debtor determines, in consultation with the DIP Lender and the Committee, that it has received the highest or otherwise best offer from a Qualified Bidder (the "Successful Bid"); provided, however, the Debtor shall obtain the prior written consent of the DIP Lender prior to the Debtor's acceptance of any bid (including a Stalking Horse Bid, Qualified Bid, Successful Bid or Back-Up Bid (as defined herein)) that provides for less than $30 million of cash proceeds at the closing thereof; provided, further, however, that notwithstanding the foregoing, the Committee shall have the right at any time, including during the Auction, to seek the Court's intervention to the extent that the DIP Lender's exercise or threatened exercise of such consent is being utilized by the DIP Lender to prevent the Debtor from accepting a bid that the Committee believes to be "higher and better" (and the rights of all parties to oppose such relief are fully reserved). The next highest or otherwise best Qualified Bid submitted at the Auction, as determined by the Debtor in consultation with the DIP Lender and the Committee, shall be the "Back-Up Bid". The Qualified Bidder submitting the Successful Bid shall be the "Successful Bidder" and the Qualified Bidder submitting the Back-Up Bid shall be the "Back-Up Bidder". In making these decisions, the Debtor, the DIP Lender and the Committee will consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the value of Assumed

Liabilities and Transferred Contracts the Qualified Bidder proposes to assume; (iv) the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction and the timing thereof, (v) indicia of good faith on the part of the Qualified Bidder, (vi) the terms and conditions of the Qualified Bidder Purchase Agreement, (vii) the requirements as to the assumption and assignment of executory contracts, (viii) the ability to provide adequate assurance of future performance to the counterparties to executory contracts being assumed and assigned, and (ix) the net benefit to the Debtor's estate;

J.    Prior to the conclusion of the Auction, the Debtor and the Successful Bidder shall enter into a definitive agreement based upon the Successful Bidder's Qualified Bidder Purchase Agreement previously submitted by the Successful Bidder and will make all related revisions to the proposed order approving the Sale to the Successful Bidder, in each case to reflect the results of the Auction;

K.    All Qualified Bids shall remain open and irrevocable for the time periods set forth in Article IV(I) above;

L.    Promptly following the conclusion of the Auction (and no later than one (1) days thereafter), the Debtor will file with the Bankruptcy Court a supplement (the "Supplement") that will inform the Bankruptcy Court of the results of the Auction; provided, that the Debtor shall consult with the DIP Lender and the Committee prior to filing the Supplement. The Supplement will identify, among other things, (i) the Successful Bidder as the proposed purchaser of the Purchased Assets, (ii) the amount and form of consideration to be paid by the Successful Bidder for the Purchased Assets, (iii) the Assumed Liabilities to be assumed by the Successful Bidder, if any, (iv) the Transferred Contracts to be assumed by the Debtor and assigned to the Successful Bidder, or the Debtor's rights and interests therein sold and transferred to the Successful Bidder, as the case may be, in connection with the Sale, and (v) the executory contracts designated by the Successful Bidder to be rejected by the Debtor in connection with the Sale. The Supplement will also include similar information relating to the Back-Up Bidder and the Back-Up Bid. In addition, the Debtor will attach to the Supplement (a) any revised proposed order approving the Sale to the Successful Bidder, (b) a copy of the Successful Bidder's Purchase Agreement, and (c) any additional information or documentation relevant to the Successful Bid. The Debtor will file the Supplement on the docket for the Chapter 11 Case, but will not be required to serve the same on any parties in interest in the Chapter 11 Case;

M.    If, after an order is entered by the Bankruptcy Court at the Sale Hearing approving the Successful Bid, the Successful Bidder shall fail to close the Sale because of a breach on the part of the Successful Bidder (after giving effect to any applicable cure periods or waivers), (i) the Back-Up Bidder shall automatically, and without the need for any action by the Debtor or the Bankruptcy Court, be deemed to be the Successful Bidder, (ii) the Back-Up Bid shall be deemed to be the Successful Bid, and (iii) the Debtor and Back-Up Bidder shall close the Sale within ten (10) Business Days following the date the Back-Up Bidder becomes

11

the Successful Bidder, without the necessity of obtaining any further order of the Bankruptcy Court[3]; and

N.  The Debtor reserves the right, in its business judgment in consultation with the DIP Lender and the Committee, to make one or more adjournments to, or cancel, the Auction or these Bidding Procedures to, among other things: (i) facilitate discussions between the Debtor, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Debtor and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Debtor with such additional documentation or information as the Debtor in its business judgment may require to determine such Qualified Bidder's ability to close the Sale, or (iv) facilitate higher or better bids.

## VIII.  Sale Hearing and Closing

The hearing to approve the Sale (the "Sale Hearing") shall take place in the courtroom of the Honorable Judge Brendan Linehan Shannon in the United States Bankruptcy Court for the District of Delaware no later than June 6, 2019, at 10:00 a.m. (prevailing Eastern Time). Following the conclusion of the Auction, with the consent of the Successful Bidder (in consultation with the DIP Lender and the Committee), or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for the Chapter 11 Case. At the Sale Hearing, the Debtor shall present the Successful Bid to the Bankruptcy Court for approval. The closing on the Sale with the Successful Bidder shall occur not later than June 21, 2019.

To be considered, any objection to the Sale for all issues other than the outcome of the Auction must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before May 30, 2019, at 5:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). Any objections to the outcome of the Auction must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before June 5, 2019, at 12:00 p.m. (prevailing Eastern Time) (the "Auction Objection Deadline")

## IX.  Assumption and Assignment Procedures for Executory Contracts

A.  Attached as **Exhibit 3** to the Bidding Procedures Order is the form of *Notice of (I) Debtor's Intent to Assume and Assign Designated Executory Contracts, (II) Cure Amounts Related to Designated Executory Contracts, and (III) Debtor's Intent to Reject Designated Executory Contracts* (the "Assignment and Rejection Notice").

---

[3] **Note**: To the extent the back-up bidder's purchase agreement is materially different than the successful bidder's agreement, or the purchased assets included therein is different, a copy of the back-up bidder's purchase agreement will need to be filed with the court and parties in interest shall be afforded an opportunity to review/object to such sale.

B.     Attached as **Exhibit A** to the Assignment and Rejection Notice is a schedule of all executory contracts and unexpired leases the Debtor proposes to assume and assign to the Successful Bidder listing the counterparties to such Transferred Contracts and the amount, if any, proposed to be paid to cure any defaults under such Transferred Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"). In conjunction with its Qualified Bid, each Qualified Bidder shall designate which of such contracts or leases it wishes to have the Debtor assume and assign and which it does not desire the Debtor to assume and assign (the contracts and leases which the Successful bidder designated for assumption and assignment shall be referred to as the "Transferred Contracts"). To the extent any Transferred Contract is determined not to be an executory contract under and for purposes of section 365 of the Bankruptcy Code, the Debtor shall instead assign to the Successful Bidder all of the Debtor's right, title and interest in, to and under such contracts pursuant to section 363 of the Bankruptcy Code. Prior to the effectiveness of any assignment of a Transferred Contract, the Successful Bidder shall, at its own cost, in addition to the purchase price, cure monetary defaults under such Transferred Contract, if any, which are capable of being cured unless any counterparty agrees to a different treatment of such cure amounts. The Successful Bidder shall have no liability for any damages arising from rejection, breach or termination of any contracts or leases which it has not designated as Transferred Contracts.

C.     Objections to the assumption and assignment or sale and transfer of the Debtor's rights and interests of and in any of the Transferred Contracts (an "Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Case no later than May 30, 2019 (the "Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such counterparty, and include complete contact information for such counterparty (including address, telephone number and email address), (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served on the following, so as to be actually received by them on or before 5:00 p.m. (prevailing Eastern Time) on the Assignment Objection Deadline:

- Counsel to the Debtor: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne, Erin N. Brady (Telephone: (310) 785-4600; email: richard.wynne@hoganlovells.com and erin.brady@hoganlovells.com) or Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn: Christopher R. Bryant and John D. Beck (Telephone: (212) 918-3000; email: chris.bryant@hoganlovells.com and john.beck@hoganlovells.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott and Andrew R. Remming (Telephone: (302) 658-9200; email: dabbott@mnat.com and aremming@mnat.com);

13

- The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy Fox, Esq.;

- Counsel to each Qualified Bidder (contact information should be obtained from the Debtor's counsel (contact details are set forth above)); and

- Counsel to the DIP Lender: Morrison & Foerster LLP, 200 Clarendon St., Boston, MA 02116, Attn: Alexander Rheaume (Telephone (617) 648-4770, email: arheaume@mofo.com) and Morrison & Foerster LLP, 250 West 55th St., New York, NY 10019, Attn: Todd M. Goren (email: tgoren@mofo.com) and Benjamin W. Butterfield (email: bbutterfield@mofo.com).

- Counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10024, Attn: Arik Preis and Allison Miller (Telephone: (212) 872-1000; email: apreis@akingump.com and amiller@akingump.com.

D.    Any counterparty to a Transferred Contract that fails to file an Assignment Objection by the Assignment Objection Deadline (i) shall be deemed to have forever waived and released any right to assert an Assignment Objection, (ii) shall have consented to the assumption and assignment of, or sale and transfer of the Debtor's right, title and interest in, to and under, their Transferred Contract, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to the Transferred Contract, (b) seeking additional amounts arising under the Transferred Contract prior to the closing from the Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be, and (c) objecting to the assumption and assignment of its Transferred Contract to the Successful Bidder.

E.    If a timely objection is filed and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held on June 6, 2019.

F.    Any Qualified Bidder may add to or remove contracts from its corresponding schedules at any time up to the conclusion of the Auction with the consent of the Debtor (in consultation with the DIP Lender and the Committee), and the Successful Bidder and Back-Up Bidder may add to or remove contracts from its corresponding schedules at any time prior to the closing of the Sale with the consent of the Debtor (in consultation with the DIP Lender and the Committee). If the Successful Bidder and/or Back-Up Bidder shall have done so, the Debtor shall file an amended or supplemental Transferred Contract and Cure Schedule adding such contracts thereto (any such added contract, an "Additional Contract") within two (2) calendar days of being informed of such a determination and provide notice thereof (and in the case of an Additional Contract, provide the counterparty thereto with the Assignment and Rejection Notice along with the amended or supplemental Transferred Contract and Cure Schedule) to each

affected counterparty. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtor will reject such an unassigned, executory contract or unexpired lease, or sell or transfer such unassigned, executory contract or unexpired lease in its reasonable discretion to the extent permitted by applicable law.

G.    Objections from any counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Case no later than ten (10) calendar days after the Debtor has sent notice to such counterparty of its intention to assume and assign, assign, or reject such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such counterparty, and include contact information for such counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served upon counsel to (a) the Debtor and the United States Trustee, and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from counsel to the Debtor), so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Additional Assignment Objection Deadline.

H.    Any counterparty to an Additional Contract that fails to file an Additional Assignment Objection by the Additional Assignment Objection Deadline (i) shall be deemed to have forever waived and released any right to assert an Additional Assignment Objection and (ii) shall have consented to the assumption and assignment of, or sale and transfer of the Debtor's rights and interests in, as the case may be, such Additional Contract, without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to its Additional Contract, (b) seeking additional amounts arising under its Additional Contract at any time from the Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be, and (c) objecting to the assumption and assignment of its Additional Contract to the Successful Bidder or the Back-Up Bidder, as the case may be.

I.    If a timely objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held (i) on or before five (5) calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Bankruptcy Court. Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned to the Successful Bidder or the Back-Up Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

## X.    Failure to Consummate Purchase

Following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale, and such failure is the result of a breach by the Successful Bidder of its obligations under its Qualified Bidder Purchase Agreement, the Successful Bidder's (other than the Stalking Horse Bidder, as applicable) Good Faith Deposit shall be forfeited to the Debtor as liquidated damages in accordance with the terms of such agreement, and if the Successful Bidder is the Stalking Horse Bidder, as applicable, the Debtor shall have the right to pursue all of its rights and remedies against the Stalking Horse Bidder in accordance with the terms of such Stalking Horse Bidder Purchase Agreement, as applicable. If the Back-Up Bidder is later designated by the Debtor to be the Successful Bidder, the foregoing shall be read to apply to the Back-Up Bidder (and its guarantors, if any) in its capacity as the Successful Bidder.

## XI.    Good Faith Deposits

The Debtor shall return the Good Faith Deposits (with interest thereon at the rate specified, if any, in the escrow agreement) of all Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, within five (5) Business Days following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder.

Subject to Article X, the Good Faith Deposit of the Successful Bidder (with interest thereon at the rate specified, if any, in the escrow agreement) shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale.

The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder (with interest thereon at the rate specified, if any, in the escrow agreement) within five (5) Business Days following the date its bid is no longer required to be open and irrevocable as set forth in Article IV(I). If the Back-Up Bidder is subsequently designated by the Debtor as the Successful Bidder as a result of the failure of the Successful Bidder to close on the Sale within the time period set forth in Article IV(I), the Back-Up Bidder shall be deemed to be the Successful Bidder and the Debtor and the Back-Up Bidder shall close the Sale within ten (10) Business Days of the Back-Up Bidder becoming the Successful Bidder. Subject to Article X, the Good Faith Deposit of the Back-Up Bidder shall be held in escrow until such closing and applied (with interest thereon at the rate specified, if any, in the escrow agreement) to its obligations at the closing of the Sale. The Debtor reserves all of its rights regarding the return of all Good Faith Deposits, and the failure by the Debtor to timely return any deposit(s) shall not serve as a claim for breach of any bid(s) or create any default in favor of any bidder(s).

## XII.    Reservation of Rights

The Debtor is authorized to amend and modify these Bidding Procedures, in consultation with the DIP Lender and the Committee, to impose additional terms and conditions on the proposed Auction and Sale of the Purchased Assets and assumption of the Assumed Liabilities (including the assumption and assignment of the Transferred Contracts), to account for any designation of a Stalking Horse Bidder, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Debtor's reasonable business judgment (in consultation with the

Committee, if any), such modifications would be in the best interest of the Debtor's estate and promote an open and fair sale Auction and Sale process including with respect to any Stalking Horse Bid and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of the Bidding Procedures Order; provided, however, that the Debtor shall not amend or modify these Bidding Procedures in a manner adverse to the rights of the Committee or the DIP Lender without the prior approval of the Committee or the DIP Lender, as applicable.  Notwithstanding anything herein to the contrary, but subject to any applicable consent rights of the DIP Lender, the Debtor may consider and accept bids from a single Qualified Bidder or from multiple Qualified Bidders for less than all or substantially all, or any combination, of the Purchased Assets in consultation with the DIP Lender and the Committee.  Notwithstanding the foregoing, the Committee shall have the right at any time, including during the Auction, to seek the Court's intervention to the extent that the DIP Lender's exercise or threatened exercise of its consent is being utilized by the DIP Lender to prevent the Debtor from accepting a bid that the Committee believes to be "higher and better" (and the rights of all parties to oppose such relief are fully reserved).

**EXHIBIT 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.** | Case No. 19-10844 (BLS) |
| Debtor.[1] | |

**NOTICE OF PROPOSED SALE OF ALL OR
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE
AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED
LIABILITIES, AND SCHEDULING FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On April 15, 2019, Achaogen, Inc. (the "Debtor") filed a motion (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking entry of two orders, in stages: (i) first, an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale of all or substantially all of the Debtor's assets (the "Purchased Assets"), (b) approving procedures for the assumption and assignment or rejection of designated executory contracts and unexpired leases (collectively, the "Transferred Contracts"), and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) approving forms and manner of notice of respective dates, times, and places in connection therewith, and (e) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) second, an order (the "Sale Order") (a) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"), other than Assumed Liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment and rejection of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.

**I.     Bidding Procedures; Stalking Horse Bidder**

On May 1, 2019, the Bankruptcy Court entered the Bidding Procedures Order [Dkt. No. __], thereby approving the Bidding Procedures Relief and the Debtor's ability to designate a Stalking Horse Bidder in the Debtor's business judgment (in consultation with the DIP Lender and the Committee) up to and including seven (7) days prior to the Bid Deadline (defined below). Upon designating a Stalking Horse Bidder, the Debtor may, in the Debtor's business judgment (in consultation with the DIP Lender and Committee), seek emergency relief from the

---

[1] The last four digits of Debtor's federal tax identification number are (3693). The Debtor's mailing address for purposes of this chapter 11 case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

[2] Capitalized terms used but not defined herein shall have such meanings ascribed to them in the Bidding Procedures and Bidding Procedures Order, as applicable.

Bankruptcy Court to obtain approval of any Bid Protections (as defined in the Bidding Procedures) for the Stalking Horse Bidder. In order for a Potential Bidder's bid to be considered to participate in the Auction, **it must comply with the Bidding Procedures, including that its bid must be delivered, so as to be received on or before 4:00 p.m. (prevailing Eastern Time), on May 29, 2019 (the "Bid Deadline")**, to the Debtor's financial advisor: Cassel Salpeter & Co., LLC, 801 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: James S. Cassel and Philip Cassel (Telephone: (305) 438-7700; email: jcassel@cs-ib.com and pcassel@cs-ib.com) with copies provided contemporaneously to (i) counsel to the Debtor: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne and Erin N. Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com and/or erin.brady@hoganlovells.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott and Andrew R. Remming (Telephone: (302) 658-9200; email: dabbott@mnat.com and aremming@mnat.com); (ii) counsel to Silicon Valley Bank, N.A., in its capacity as a prepetition lender and DIP lender, under the Debtor's debtor-in-possession financing facility, Morrison & Foerster LLP, 200 Clarendon St., Boston, MA 02116, Attn: Alexander Rheaume (Telephone (617) 648-4770, email: arheaume@mofo.com) and Morrison & Foerster LLP, 250 West 55th St., New York, NY 10019, Attn: Todd M. Goren and/or Benjamin W. Butterfield (Telephone: (212) 468 8000, email: bbutterfield@mofo.com and/or tgoren@mofo.com); and (iii) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10024, Attn: Arik Preis and Allison Miller (Telephone: (212) 872-1000; email: apreis@akingump.com and amiller@akingump.com (collectively, the "Notice Parties").

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the Form Purchase Agreement or Stalking Horse Bidder Purchase Agreement, as applicable, kindly submit a request in writing (email and facsimile requests are acceptable) to (a) the Debtor's counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne and Erin N. Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com and/or erin.brady@hoganlovells.com) or Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn: Christopher R. Bryant and John D. Beck (Telephone: (212) 918-3000; email: chris.bryant@hoganlovells.com and john.beck@hoganlovells.com) or Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott and Andrew R. Remming (Telephone: (302) 658-9200; email: dabbott@mnat.com and aremming@mnat.com) and/or (b) the Debtor's financial advisor: Cassel Salpeter & Co., LLC, 801 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: James S. Cassel and Philip Cassel, (Telephone: (305) 438-7700; email: jcassel@cs-ib.com and pcassel@cs-ib.com). Additionally, the Sale Motion and the exhibits thereto are available at www.kccllc.net/achaogen or those with PACER accounts may download copies from the Bankruptcy Court's website at https://ecf.deb.uscourts.gov/. In order for Potential Bidders to obtain access to the Debtor's dataroom, each Potential Bidder must first sign and deliver a confidentiality agreement to the Debtor and provide certain financial data, which must be acceptable to the Debtor. Please refer to the Bidding Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

## II.    Sale Hearing and Closing

The Sale Hearing is scheduled for _____ (prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 Market Street North, 3rd Floor, Wilmington, DE 19801, before the Honorable Brendan Linehan Shannon, United States Bankruptcy Judge.  The Sale Hearing is being held to approve the highest or otherwise best offer received for the Purchased Assets at the Auction, which, if any, will take place at the offices of Hogan Lovells US LLP, 4085 Campbell Ave #100, Menlo Park, CA 94025 on June 3, 2019, commencing at 10:00 a.m. (prevailing Pacific Time).  The Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of the Debtor's Chapter 11 Case or without prior notice by an announcement of the adjourned date at the Sale Hearing. The closing on the Sale with the Successful Bidder shall occur not later than June 21, 2019.

**THE DEADLINE TO OBJECT TO THE DEBTOR'S REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES (OTHER THAN THE ASSUMED LIABILITIES) TO THE SUCCESSFUL BIDDER FOR ALL OBJECTIONS OTHER THAN TO THE OUTCOME OF THE AUCTION (EACH, A "<u>SALE OBJECTION</u>") IS MAY 30, 2019, at 5:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>SALE OBJECTION DEADLINE</u>").  ANY OBJECTIONS TO THE OUTCOME OF THE AUCTION (EACH, AN "<u>AUCTION OBJECTION</u>") IS JUNE 5, 2019, AT 12:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>AUCTION OBJECTION DEADLINE</u>").**

Any person or entity wishing to submit a Sale Objection or Auction Objection must do so in writing and state with particularity the grounds for such objections or other statements of position. All Sale Objections and Auction Objections shall be served so as to be actually received by no later than the Sale Objection Deadline or Auction Objection Deadline, respectively, by (i) counsel to the Debtor: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne and/or Erin N. Brady or Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn: Christopher R. Bryant and John D. Beck (Telephone: (212) 918-3000; email: chris.bryant@hoganlovells.com and john.beck@hoganlovells.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott and Andrew R. Remming (Telephone: (302) 658-9200; email: dabbott@mnat.com and aremming@mnat.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (Telephone: (302) 573-6491, email: timothy.fox@usdoj.gov); and (iii) those parties who have filed notices of appearance and/or requested service of all motions and pleadings in this Chapter 11 Case prior to the date of service thereof.

The failure of any person or entity to file and serve a Sale Objection or Auction Objection on or before the Sale Objection Deadline or Auction Objection Deadline, as applicable, (i) shall be deemed a consent to the Sale to the Successful Bidder and the other relief requested in the Sale Motion, and (ii) shall be a bar to the assertion, at the Sale Hearing or thereafter, to the Sale Motion, the Auction, the sale of the Purchased Assets (including in any such case, without

3

limitation, the transfer of the Purchased Assets free and clear of all Encumbrances, other than the Assumed Liabilities).

## III.    Debtor's Contracts and Leases

The Sale Order, if approved, shall authorize the assumption and assignment of the Transferred Contracts of the Debtor and the rejection by the Debtor of certain other designated executory contracts and unexpired leases. In accordance with the Bidding Procedures Order, individual notices setting forth the specific Transferred Contracts to be assumed by the Debtor and assigned to the Successful Bidder, or sold and transferred to the Successful Bidder, and the proposed Cure Amounts for such contracts will be given to all counterparties to the Transferred Contracts.  Such counterparties will be given the opportunity to object to the assumption and assignment, or sale and transfer, of a Transferred Contract and the proposed Cure Amount.

This Notice is subject to the full terms and conditions of the Bidding Procedures and the Bidding Procedures Order, which shall control in the event of any conflict. The Debtor encourages all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.

Dated: April 30, 2019
         Wilmington, Delaware

## EXHIBIT 3

**Assignment and Rejection Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.** | Case No. 19-10844 (BLS) |
| Debtor.[1] | |

**NOTICE OF PROPOSED (I) ASSUMPTION AND ASSIGNMENT OF DESIGNATED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) REJECTION
OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On April 15, 2019, Achaogen, Inc. (the "Debtor") filed a motion (the "Sale Motion)" with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking entry of two orders, in stages: (i) first, an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale of all or substantially all of the Debtor's assets (the "Purchased Assets"), (b) approving procedures for the assumption and assignment or rejection of designated executory contracts and unexpired leases (collectively, the "Transferred Contracts"), and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) approving forms and manner of notice of respective dates, times, and places in connection therewith, and (e) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) second, an order (the "Sale Order") (a) authorizing the Sale of the Purchased Assets free and clear of all liens, claims, interests and other encumbrances (collectively, "Encumbrances"), other than Assumed Liabilities, to the Successful Bidder or Stalking Horse Bidder, as applicable, submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment or rejection of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief. On May 1, 2019, the Bankruptcy Court entered the Bidding Procedures Order [Dkt. No. __], thereby approving the Bidding Procedures Relief.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO ONE OR MORE OF THE CONTRACTS OR LEASES REFERRED TO HEREIN.**

**TRANSFERRED CONTRACTS**

Attached as **Exhibit A** is a schedule of all executory contracts and unexpired leases (collectively, the "Transferred Contracts") the Debtor proposes to assume and assign to the Successful Bidder (which may be a Stalking Horse Bidder, if applicable), listing the counterparties to such contracts (the "Contract Counterparties") and the amount, if any, proposed

---

[1] The last four digits of Debtor's federal tax identification number are (3693). The Debtor's mailing address for purposes of this chapter 11 case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

[2] Capitalized terms used but not defined herein shall have such meanings ascribed to them in the Bidding Procedures and Bidding Procedures Order, as applicable.

to be paid to cure any monetary defaults under the Transferred Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"). Attached as **Exhibit B** is a schedule of all executory contracts and unexpired leases the Debtor proposes to reject. The Successful Bidder reserves the right to revise these schedules in accordance with its Qualified Bidder Purchase Agreement and Bidding Procedures at any time prior to the closing on the Purchased Assets.

To the extent that any Transferred Contract is determined by an order of the Bankruptcy Court, or as between the Debtor and the applicable Contract Counterparty, not to be an executory contract under and for purposes of section 365 of the Bankruptcy Code, the Debtor shall instead sell, assign and transfer to the Successful Bidder all of the Debtor's right, title and interest in, to and under such Transferred Contracts pursuant to section 363 of the Bankruptcy Code. Prior to any such sale and transfer of a Transferred Contract, the Successful Bidder shall cure any monetary defaults or pay other amounts due under such Transferred Contract which are capable of being cured or paid as if such Transferred Contract had been subject to section 365 of the Bankruptcy Code.

IF YOU AGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR TRANSFERRED CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.

IF YOU DISAGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR CONTRACT(S), YOU MAY OBJECT TO THE PROPOSED CURE AMOUNTS NO LATER THAN **MAY 30, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME).**

Objections to the assumption and assignment of any of the Transferred Contracts (including the Cure Amounts listed on **Exhibit A**) (an "Assignment Objection") must: (i) be made in writing and filed on the docket for the Case no later than **May 30, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "Assignment Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged to be due by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iv) be served on the following, so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Assignment Objection Deadline:

- Counsel to the Debtor: Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, California 90067, Attn: Richard L. Wynne, Erin N. Brady, and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott, Andrew R. Remming;

- The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq.;

- ▪ Counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10024, Attn: Arik Preis and Allison Miller (Telephone: (212) 872-1000; email: apreis@akingump.com and amiller@akingump.com)

- ▪ Counsel to Silicon Valley Bank, N.A., in its capacity as a prepetition lender and DIP lender: Morrison & Foerster LLP, 200 Clarendon St., Boston, MA 02116, Attn: Alexander Rheaume (Telephone (617) 648-4770, email: arheaume@mofo.com) and Morrison & Foerster LLP, 250 West 55th St., New York, NY 10019, Attn: Todd M. Goren and/or Benjamin W. Butterfield (Telephone: (212) 468-8000, email: bbutterfield@mofo.com and/or tgoren@mofo.com);

- ▪ Counsel to each Qualified Bidder (contact information should be obtained from the Debtor's counsel by contacting Christopher R. Bryant and John D. Beck, at chris.bryant@hoganlovells.com and john.beck@hoganlovells.com)

If you file an Assignment Objection satisfying the requirements herein, the Debtor and the Successful Bidder or Stalking Horse Bidder, as applicable, will confer with you in good faith to attempt to resolve any such Assignment Objection without Bankruptcy Court intervention. If the applicable parties determine that the Assignment Objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall resolve such Assignment Objection at a hearing to be held (i) on June 6, 2019, or (ii) such other date designated by the Bankruptcy Court.

If the Successful Bidder or Back-Up Bidder, in accordance with the Bidding Procedures, identifies additional executory contracts or unexpired leases that it wishes to add to the Transferred Contracts and Cure Schedule (each an "Additional Contract") (or wishes to remove a Transferred Contract from the Transferred Contracts and Cure Schedule), the Debtor shall, within two (2) calendar days of the Successful Bidder or Back-Up Bidder making such a determination, send a supplemental Assignment and Rejection Notice to the applicable Contract Counterparties to such executory contracts or unexpired leases added or removed from the Transferred Contracts and Cure Schedule. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtor will, in its sole discretion, either reject such an unassigned executory contract or unexpired lease to the extent permitted by law. In no event will the Successful Bidder be responsible for any unassigned executory contracts or unexpired leases.

Objections from any Contract Counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Case no later than ten (10) calendar days after the Debtor has sent notice to such Contract Counterparty of its intention to assume and assign, assign, or reject such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules,

3

and (iv) be served upon counsel to (a) the Debtor and the United States Trustee, and (b) the Successful Bidder, and the Back-Up Bidder (addresses for the foregoing may be obtained from counsel to the Debtor), so as to be actually received by them on or before 4:00 p.m. (prevailing Eastern Time) on the Additional Assignment Objection Deadline.

If a timely objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held (i) on or before five (5) calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Bankruptcy Court. Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned, or assigned, as the case may be, to the Successful Bidder or the Back-Up Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

**IF YOU FAIL TO TIMELY FILE AND PROPERLY SERVE AN ASSIGNMENT OBJECTION AS PROVIDED HEREIN, INCLUDING, WITHOUT LIMITATION, AN OBJECTION TO A CURE AMOUNT (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY RIGHT TO ASSERT AN ASSIGNMENT OBJECTION OR ADDITIONAL ASSIGNMENT OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, OF THE DEBTOR'S RIGHT, TITLE AND INTEREST IN, TO AND UNDER, SUCH TRANSFERRED CONTRACT ON THE TERMS SET FORTH IN THIS ASSIGNMENT NOTICE AND THE FORM PURCHASE AGREEMENT TO BE ENTERED INTO WITH THE SUCCESSFUL BIDDER (II) YOU WILL HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF, OR SALE AND TRANSFER OF THE DEBTOR'S RIGHT, TITLE AND INTEREST IN, TO AND UNDER, THEIR TRANSFERRED CONTRACT, AS THE CASE MAY BE, WITHOUT THE NECESSITY OF OBTAINING ANY FURTHER ORDER OF THE BANKRUPTCY COURT AND (III) YOU WILL BE BARRED AND ESTOPPED FOREVER FROM ASSERTING OR CLAIMING AGAINST THE DEBTOR, THE SUCCESSFUL BIDDER OR THE BACK-UP BIDDER THAT ANY ADDITIONAL CURE AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, MUST BE SATISFIED, UNDER SUCH TRANSFERRED CONTRACT.**

The Debtor's assumption and assignment, or sale and transfer, of a Transferred Contract is subject to approval by the Bankruptcy Court, and consummation of the closing of the Sale. If there is no closing, the Transferred Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtor.

The inclusion of any document on the list of Transferred Contracts shall not constitute or be deemed to be a determination or admission by the Debtor or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

Any Assignment Objection shall not constitute an objection to any of the other relief requested in the Sale Motion to be approved by the Sale Order (e.g., the sale of the Purchased Assets by the Debtor to the Successful Bidder free and clear of all Encumbrances other than Assumed Liabilities). Parties wishing to object to the other relief requested in the Sale Motion (excluding the Bidding Procedures) must timely file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bidding Procedures Order.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas and/or in accordance with the Bidding Procedures Order. Parties in interest are encouraged to monitor the electronic court docket.

This Notice is subject to the full terms and conditions of the Bidding Procedures and Bidding Procedures Order, which shall control in the event of any conflict. The Debtor encourages parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: April 30, 2019
      Wilmington, Delaware

<u>Exhibit A</u>
(Assignment and Rejection Notice)

Transferred Contracts

| No. | Contract/Lease Party | Contract Counterparty | Contract/Lease Title | Date of Entry | Cure Amount |
|---|---|---|---|---|---|
| 1 | [X] | [X] | [X] | [X] | $[X] |

<u>Exhibit B</u>
(Assignment and Rejection Notice)

Rejected Executory Contracts and Unexpired Leases