

Exhibit K

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **Achaogen, Inc.,** | Case No. 19-10844 (BLS) |
| Debtor.[1] | **Re: D.I. 30** |

### ORDER (I) APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTOR TO CIPLA USA INC. FREE AND CLEAR OF LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon the *Debtor's Motion for (I) an Order Pursuant To Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All Assets of the Debtor; (B) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief; (II) an Order (A) Approving the Sale of the Debtor's Assets Free and Clear of Claims, Liens and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases; and (III) Certain Related Relief*, on April 15, 2019 [D.I. 30] (the "Sale Motion");[2] and the Bankruptcy Court having entered the *Order Pursuant to Sections 105, 363, 364, 365 and 541 of*

---

[1] The last four digits of the Debtor's federal tax identification number are 3693. The Debtor's mailing address for purposes of this Chapter 11 Case is 1 Tower Place, Suite 400, South San Francisco, CA 94080.

[2] Unless otherwise indicated, capitalized terms used, but not defined, herein have the meaning ascribed to them in the Sale Motion, the Bidding Procedures or the Sale Agreement (as defined herein), as the context requires. No provisions, including defined terms, contained in the Sale Agreement, or any other agreement, document, instrument or otherwise entered into or delivered in connection therewith, shall be binding on or applicable to any other Buyer, except as otherwise set forth in this Sale Order.

*the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All Assets of Debtor; (B) Approving Procedures for the Assumption and Assignment, Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; (D) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (E) Granting Related Relief,* on May 1, 2019 [D.I. 123] (the "Bidding Procedures Order"), which, among other things, (i) approved the Bidding Procedures for the sale of all or substantially all of the Debtor's assets, (ii) approved the form and manner of notice of the Auction and Sale Hearing (as each such term is defined below); (iii) approved the manner in which the notice of the assumption and assignment of the designated executory contracts and unexpired leases would be given (the "Assignment and Rejection Procedures"); and the Debtor having solicited Bids in accordance with the Bidding Procedures; and the Debtor having conducted the Auction in accordance with the Bidding Procedures; and the Debtor having selected Cipla USA Inc. ("Buyer") as having the highest or otherwise best Qualified Bid for the Purchased Assets set forth in the asset purchase agreement dated June 20, 2019 (as amended, the "Sale Agreement"), attached hereto as Exhibit A, at the conclusion of the Auction; and Buyer having agreed to assume the Assumed Liabilities of the Debtor identified in the Sale Agreement pursuant to the terms and conditions set forth in the Sale Agreement, all in accordance with the Bidding Procedures and the Bidding Procedures Order; and the Bankruptcy Court having commenced a hearing on June 24, 2019, which hearing was continued on June 25, 2019 and July 1, 2019 (the "Sale Hearing"), to consider approval of (i) the sale of the Purchased Assets under the Sale Agreement (the "Sale") free and clear of all Liens (as defined below), Claims (as defined in section 101(5) of title 11 of the United States Code (the "Bankruptcy Code")) and

other interests; and (ii) the assumption and assignment of certain executory contracts and unexpired leases; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale and upon the record of the hearing to consider approval of the Bidding Procedures (the "Bidding Procedures Hearing"), the Sale Hearing, the *Declaration of Blake Wise in Support of the First Day Relief* [D.I. 3], the *Declaration of Blake Wise in Support of Entry of the Sale Order* [D.I. 295], the *Declaration of James S. Cassel in Support of Entry of the Sale Order* [D.I. 294], the Declaration of *Deep Sagar Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code* [D.I. 289], and this Chapter 11 Case (as defined herein) and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.    **Bankruptcy Petition**.  On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this case (this "Chapter 11 Case").

B.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Final Order**. This order ("Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Time is of the essence in closing the Sale referenced

---

[3] This Sale Order shall be deemed to incorporate all findings of fact and conclusions of law made on the record at the hearing for consideration of the entry of the Bidding Procedures Order and the Sale Hearing (as defined herein) pursuant to Bankruptcy Rule 7052. In addition, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Bankruptcy Rule 7052.

herein, the Debtor and Buyer intend to close the Sale as soon as practicable, and there is no just reason for delay in the implementation of this Sale Order.  Specifically, the Sale must be approved and consummated promptly in order to preserve the viability of the business in the hands of Buyer as a going concern, and to maximize the value to the Debtor, its estate, its creditors, and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

D.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, 364, 365, and 541 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

E.    **Notice**.  As evidenced by the certifications of service previously filed with the Bankruptcy Court, and based on the representations of counsel at the Bidding Procedures Hearing and the Sale Hearing, proper, timely, adequate and sufficient notice of the Sale Motion, the Bidding Procedures Hearing, the Auction, the Sale Agreement, this Sale Order and the Sale Hearing, have been provided in accordance with the Bidding Procedures Order, sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and the Bidding Procedures Order, and Local Rule 6004-1.  Such notice was good and sufficient and appropriate under the particular circumstances and all known creditors of the Debtor and other parties in interest in the Chapter 11 Case were offered a reasonable opportunity to object and be heard.  No other or further notice of the Sale Motion, including, without limitation, the Sale Agreement, the Auction, the assumption and assignment of the Assumed Contracts (as defined

below) (and proposed Cure Amounts related thereto), the Sale Hearing, or of the entry of this Sale Order was or is necessary or shall be required.

F.      An Assignment and Rejection Notice has been provided to each of the counterparties (the "Contract Counterparties") to the contracts identified on the schedule the Debtor filed with the Bankruptcy Court, dated May 17, 2019 [D.I. 194] (as thereafter supplemented and amended by (i) the schedule the Debtor filed with the Bankruptcy Court, dated May 28, 2019 [D.I. 223], (ii) the schedule the Debtor filed with the Bankruptcy Court, dated June 14, 2019 [D.I. 274], (iii) the schedule the Debtor filed with the Bankruptcy Court, dated June 22, 2019 [D.I. 291], and (iv) the schedule the Debtor filed with the Bankruptcy Court, dated July 2, 2019 [D.I. 331], and as it may be supplemented or amended in the future in accordance with this Sale Order or the Sale Agreement, the "Assumed Contracts and Cure Schedule") and, the contracts listed thereon which are being assumed and assigned to Buyer pursuant to and in accordance with the Sale Agreement and this Sale Order (and as set also forth on Exhibit B attached hereto), the "Assumed Contracts"), all in accordance with the Assignment and Rejection Procedures as provided by the Bidding Procedures Order.

G.      The service of the Assignment and Rejection Notice was sufficient under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or the proposed Cure Amounts related thereto, if any.  The Contract Counterparties to the Assumed Contracts have had a reasonable opportunity to object to the assignment and assumption of the Assumed Contracts and the associated Cure Amounts.

H.      The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

I.      No trustee or examiner has been appointed in the Chapter 11 Case.

J.      The disclosures made by the Debtor concerning the Sale Motion, the Sale Agreement, the Sale, Buyer, and the Sale Hearing were good, complete and adequate.

K.      **Opportunity to Object**.    A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all creditors of the Debtor and other parties in interest in the Chapter 11 Case, including, without limitation, the following: (i) the United States Trustee for Region 3; (ii) counsel to the Creditors' Committee, the Prepetition Lender and DIP Lender (as such terms are defined below); (iii) all parties asserting a security interest in the Purchased Assets to the extent any such interest is reasonably known to the Debtor; (iv) various federal, state, county and city tax and regulatory authorities; (v) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets or that have been identified by the Debtor or its advisors as a potential buyer of the Purchased Assets; (vi) local and state environmental authorities and the Environmental Protection Agency; (vii) local, state and federal authorities and agencies that have issued licenses or permits to the Debtor with respect to the operation and use of the Purchased Assets; (viii) the contract counterparties whose contracts are identified as being assigned; (ix) all of the Debtor's known creditors, and (x) all parties requesting notice pursuant to Bankruptcy Rule 2002.

L.      **Title in the Purchased Assets**.  The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.   The Debtor is the sole and lawful owner of the Purchased Assets.

M.      **Business Justification**.   The Debtor has demonstrated a sufficient basis and compelling circumstances to sell the Purchased Assets to Buyer, and to assume and assign the Assumed Contracts to Buyer, pursuant to the terms and conditions of the Sale Agreement.   Such

action is an appropriate exercise of the Debtor's business judgment and in the best interest of the Debtor, the estate and its creditors.  Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly given, among other reasons, that (a) the Debtor's financing under the DIP Credit Agreement (as defined below) expires on September 30, 2019 (unless terminated prior to such date in accordance with the DIP Loan Documents (as defined in the DIP Order (as defined herein)), and (b) the Debtor is in breach of a Milestone (as such term is defined in the DIP Credit Agreement) resulting from the failure of  the Sale to be consummated by June 28, 2019; (ii) the Successful Bid set forth in the Sale Agreement constitutes the highest and best offer for the Purchased Assets; (iii) the Sale Agreement and the Closing will present the best opportunity to realize the value of the Debtor's business on a going concern basis and to avoid a decline and devaluation of the Debtor's business; and (iv) the Debtor simply does not have the funding to continue operations in the absence of the sale of the Purchased Assets.  Entry of this Sale Order (and all provisions hereof) is a condition precedent to Buyer consummating the Sale Agreement.

N.    **Opportunity to Bid**.  The Debtor and its professionals marketed the Purchased Assets appropriately and conducted the marketing and sale process (including the Auction) as set forth in the Sale Motion in good faith without collusion and in accordance with the Bidding Procedures and the Bidding Procedures Order.  The marketing process set forth in the Bidding Procedures and the Bidding Procedures Order was fair in substance and procedure and afforded a full and fair opportunity for any party to make a higher or otherwise better offer to purchase the Purchased Assets.  Based upon the record of these proceedings, all creditors of the Debtor, other

parties in interest in the Chapter 11 Case, and all prospective buyers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

O.      **Auction**.    The Debtor, in the exercise of its reasonable discretion, and in consultation with (a) the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case (the "Creditors' Committee") and (b) Silicon Valley Bank, N.A., in its capacity as the Prepetition Lender and DIP Lender (hereinafter, the "Prepetition Lender" and the "DIP Lender," respectively) under the Debtor in Possession Credit and Security Agreement dated as of April 15, 2019 (the "DIP Credit Agreement"), conducted an auction which concluded on June 4, 2019, for the Purchased Assets being purchased by Buyer under the Sale Agreement (the "Auction").  The Debtor, the Committee, the Prepetition Lender and DIP Lender, and their respective agents and representatives, have complied in all respects with the Bidding Procedures and Bidding Procedures Order with respect to the Auction.

P.      **Highest or Otherwise Best Offer**.  The total consideration provided by Buyer for the Purchased Assets is the highest and otherwise best offer for the Purchased Assets received by the Debtor.  At the conclusion of the Auction, the Debtor, in exercising its reasonable discretion, including to conduct multiple auctions for the Debtor's assets, following consultation with the Committee, Prepetition Lender, and DIP Lender determined that Buyer submitted the highest or otherwise best offer for the Purchased Assets, and that the Back-up Bidders (who are identified in paragraph 49 of this Sale Order), submitted the second highest or otherwise best offers for the assets identified in their respective purchase agreements.  Thus, the Debtor declared Buyer the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures, the Bidding Procedures Order and the Sale Agreement, and designated the Back-up Bidders (subject to entering into definitive documentation), and such determination constitutes the valid and

sound exercise of the Debtor's business judgment. The Debtor, Buyer, the Back-up Bidders, and their respective agents and representatives, have complied in all respects with the Bidding Procedures and Bidding Procedures Order.

Q.    **Good Faith Purchasers**. The Sale Agreement and the Sale have been negotiated by the Debtor and Buyer, and their respective agents and representatives, in good faith, at arms' length, and without collusion or fraud. The terms and conditions of the Sale Agreement, including the consideration to be paid by Buyer to the Debtor pursuant to the Sale Agreement for the Purchased Assets, are fair and reasonable, and the Sale, including each part thereof with respect to Buyer, is in the best interest of the Debtor, its estate, and its creditors.

R.    Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale and assignment of the Purchased Assets and Assumed Contracts that Buyer is acquiring pursuant to the Sale Agreement.

S.    The Sale Agreement was not controlled by an agreement between or among potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtor and Buyer have not engaged in any conduct that would cause or permit any of the Sale Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code. Buyer is not an "affiliate" or "insider" of the Debtor as defined in section 101 of the Bankruptcy Code, and no common identity of incorporation, director, or stockholder existed or will exist between Buyer, on the one hand, and the Debtor, on the other hand, immediately prior to or after the Closing Date.

T.      An injunction against creditors of the Debtor and third parties pursuing Liens, Claims and Excluded Liabilities against Buyer is necessary to induce Buyer to close the Sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate, and will benefit all creditors of the Debtor.

U.      Buyer has acted in good faith in its negotiations with the Debtor, submitting a bid, and participating in the Auction.

V.      **Corporate Power and Authority**.  The Debtor has full corporate power and authority to execute and deliver the Sale Agreement and to perform all of its obligations thereunder, and the sale of the Purchased Assets and assignment of the Assumed Contracts have been duly and validly authorized by all corporate authority necessary to consummate the Sale. No consents or approvals, other than as expressly provided for in the Sale Agreement, and the entry of this Sale Order, are required by the Debtor to consummate the Sale.

W.      **Transfer and Sale of Assumed Liabilities; Assumption and Assignment in Best Interest**.  The transfer and sale of the Assumed Liabilities pursuant to the terms of the Sale Agreement and this Sale Order and the assumption of the Assumed Contracts by the Debtor and the assignment thereof to Buyer pursuant to the terms of the Sale Agreement and this Sale Order are integral to the Sale Agreement and in the best interest of the Debtor, its estate and its creditors, and represent the reasonable exercise of sound and prudent business judgment by the Debtor.  Accordingly, such transfer and sale to Buyer and the assumption and assignment are reasonable, enhance the value of the Debtor's estate, and do not constitute unfair discrimination. As among the Debtor and Buyer, nothing in this Sale Order shall enlarge or restrict any obligations of the Debtor or Buyer under the Sale Agreement with respect to the Assumed Liabilities or the Assumed Contracts.  No provision of any Assumed Contract that purports to

prohibit, restrict, or condition the assignment of any such Assumed Contract in connection with the Sale shall have any force or effect.

X.     **Cure/Adequate Assurance**. The Debtor has met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  The Debtor has provided adequate assurance of cure of any default existing prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from such default under any of the Assumed Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Pursuant to the provisions of the Sale Agreement, Buyer shall pay Cure Amounts with respect to the Assumed Contracts, in cash on the Assumption Effective Date, in accordance with the terms of the Sale Agreement.  Except as otherwise set forth in the Sale Agreement, the Debtor's estate shall not be responsible for the payment of any Cure Amounts and Buyer's payment of any Cure Amounts shall not (i) be deemed a purchase price adjustment that reduces the overall consideration received by the Debtor's estate, or (ii) reduce the amount of the cash and contingent consideration that is otherwise payable by Buyer under the Sale Agreement; *provided*, that, as set forth in (and in accordance with) Section 2.5(e) of the Sale Agreement, in the event that the aggregate Cure Amounts for the Assumed Contracts to be assumed and assigned thereunder exceed the Target Cure Amount, the Closing Payment shall be reduced on a dollar-for-dollar basis.  Buyer has provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of section 365(b)(1)(C) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code.  The Contract Counterparties were each given adequate notice and the opportunity to object to the Assignment and Rejection Notice and are deemed to have consented

pursuant to 11 U.S.C. § 363(f)(2); any such objection filed by a Contract Counterparty that has not been withdrawn is hereby overruled. Except as expressly set forth in the Sale Agreement including with respect to the Assumed Liabilities, the Assumed Contracts will not subject Buyer to any liability whatsoever relating to any period prior to the Closing Date thereunder whether arising before or after the Closing Date, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, on any theory of law or equity.

   Y. **<u>Free and Clear</u>**. Buyer would not have entered into the Sale Agreement to acquire the Purchased Assets, and would exercise its right to terminate the Sale Agreement, if the sale of the Purchased Assets were to be transferred to it other than free and clear of all Liens, Claims and Excluded Liabilities (other than the Assumed Liabilities), or if Buyer would, or in the future could, be liable for any such Liens, Claims or Excluded Liabilities (other than the Assumed Liabilities). A sale of the Purchased Assets other than one free and clear of all Liens, Claims and Excluded Liabilities (other than the Assumed Liabilities) would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate, with less certainty than the Sale. Therefore, the Sale contemplated in the Sale Agreement is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

   Z. **<u>Satisfaction of 363(f) Standards</u>**. The Debtor may sell and assign the Purchased Assets free and clear of all Liens, Claims and Excluded Liabilities, because, with respect to each creditor asserting a Lien, Claim or Excluded Liability, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens, Claims or Excluded Liabilities who did not object or who withdrew their objections to this Sale Order are deemed to have consented to the Sale Motion and the sale and assignment of the

Purchased Assets to Buyer pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders

of Liens, Claims, or Excluded Liabilities who did object fall within one or more of the other

subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having

their Liens, Claims or Excluded Liabilities, if any, attach to the proceeds of the Sale ultimately

attributable to the Purchased Assets in which such holders allege a Lien, Claim or Excluded

Liability in the same order of priority, with the same validity, force and effect that such holder

had prior to the Sale, and subject to any claims and defenses the Debtor and its estate may

possess with respect thereto; *provided*, that the Debtor will cause the proceeds of all Sale to be

remitted pursuant to paragraph 48 of this Sale Order.

AA.    **No Successor Liability**. The transactions contemplated under the Sale Agreement

do not amount to a consolidation, merger, or de facto merger of Buyer with the Debtor and/or the

Debtor's estate, there is not substantial continuity between the Debtor and Buyer, there is no

common identity between the Debtor and Buyer, there is no continuity of enterprise between the

Debtor and Buyer, Buyer is not a mere continuation of the Debtor or its estate, and Buyer does

not constitute a successor to the Debtor or its estate in any way.  Buyer would not have acquired

the Purchased Assets but for the foregoing protections against potential claims based upon

"successor liability" or similar theories.

BB.    **No Fraudulent Transfer**.  The Sale is not for the purpose of hindering, delaying

or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any

state, territory, or possession or the District of Columbia.  Neither the Debtor nor Buyer has

entered into the Sale Agreement or is consummating the Sale with any fraudulent or otherwise

improper purpose.

CC.    **Fair Consideration**.  The consideration provided for by Buyer for the Purchased Assets indicated in the Sale Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession or the District of Columbia.

DD.    **Compliance with Bankruptcy Code**.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale as of the Closing Date.

EE.    **Sale Transactions Not a *Sub Rosa* Plan**.  The sale and assignment of the Purchased Assets and Assumed Liabilities outside of a plan of reorganization pursuant to the Sale Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The Sale does not constitute a *sub rosa* chapter 11 plan.

FF.    The Sale contemplated by the Sale Agreement is in the best interest of the Debtor, its estate, its creditors, interest holders and all other parties in interest in the Chapter 11 Case; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted**.  The relief requested in the Sale Motion is hereby granted in its entirety.

2.    **Objections Overruled**.  All objections and responses to the Sale Motion, the Auction, this Sale Order or the relief granted herein (including all reservations of rights included

therein) that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.      **Notice**.   Notice of the Sale Motion, and the assumption and assignment of the Assumed Contracts (including proposed Cure Amounts related thereto), the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with the Bidding Procedures, sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and Local Rule 6004-1.

4.      **Prior Findings of Fact and Conclusions of Law**.   The Bankruptcy Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

5.      **Approval**.   The Sale Agreement (and all ancillary documents related thereto) is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor and Buyer are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Sale Agreement and to execute, deliver and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Sale Agreement and this Sale Order, including, without limitation, deeds, assignments, patents, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Debtor or Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to Buyer or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Sale Agreement, without any further corporate action or orders of the Bankruptcy Court. Notwithstanding anything set forth in this Sale Order to the

contrary, all rights, duties and obligations of Buyer may be assigned to a designee (including an Affiliate) of Buyer in accordance with the Sale Agreement; *provided*, that Buyer is, and shall remain, primarily and irrevocably responsible for the full performance of Buyer's duties and obligations under the Sale Agreement notwithstanding any such designation or the terms thereof.

6.     **Good Faith**.   Buyer is a good faith purchaser of the Purchased Assets and is hereby granted and entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Sale Agreement or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Sale Order and the Sale Agreement, as the case may be.

7.     **Section 363(n) of the Bankruptcy Code**.   The Sale approved by this Sale Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) or any other section of the Bankruptcy Code.

8.     **Documentation**.   The Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale contemplated by the Sale Agreement, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation, by-laws, or certificates or articles of amendment, and all such other actions, filings, or recordings as may be

required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate, and all such officials are hereby authorized to accept the foregoing.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

9. **Cooperation**.  The Debtor is hereby authorized and directed to cooperate with Buyer as reasonably requested by Buyer or as required of the Debtor under the Sale Agreement, and take all actions and execute all documents which Buyer reasonably and in good faith determines is necessary or desirable to ensure that the Sale related to Buyer is consummated in accordance with the Sale Agreement, and the Debtor is authorized to make such modifications or supplements reasonably acceptable to the Debtor and Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the Closing to facilitate such consummation as contemplated by the Sale Agreement.  Without in any way limiting the foregoing, the Debtor will cooperate with Buyer in all reasonable respects to facilitate meetings with the U.S. Biomedical Advanced Research and Development Authority ("BARDA") or other agencies or offices within the U.S. Department of Health & Human Services, and will use commercially reasonable efforts to assist Buyer in connection with any submission made or to be made by Buyer following the Closing Date with regard to any Buyer request to be awarded a contract with BARDA; *provided*, that nothing in the Sale Agreement or this Sale Order, except for Debtor's obligations with respect to the Licensed Assets under paragraph 12 hereunder, shall be deemed to require the Debtor to remain a debtor in the Chapter 11 Case or maintain its corporate existence for any period of time beyond forty-five (45) days after the Closing Date of the Sale under the Sale Agreement.

10.     **Duty to Close**.   Neither the Debtor nor Buyer shall have any obligation to proceed with the Closing until all conditions precedent to their respective obligations to proceed have been met, satisfied or waived in accordance with the terms of the Sale Agreement; *provided*, the Debtor shall consult in good faith with the DIP Lender and the Creditors' Committee prior to waiving any conditions precedent with respect thereto.

11.     **Valid Transfer**.   Effective as of the Closing of the Sale, (i) the sale and assignment of the Purchased Assets and the Assumed Contracts by the Debtor to Buyer pursuant to the terms of the Sale Agreement shall constitute a legal, valid and effective transfer of the Purchased Assets and the Assumed Contracts, notwithstanding any requirement for approval or consent by any person, and shall vest Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets and Assumed Contracts, free and clear of all Liens, Claims and Excluded Liabilities (other than the Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code, and (ii) the assumption of the Assumed Contracts and all Assumed Liabilities by Buyer constitutes a legal, valid, and effective assignment and delegation of any and all obligations, liabilities, and claims in respect thereof to Buyer and, other than to the extent expressly provided in this Sale Order and/or constituting Excluded Liabilities under the Sale Agreement, divests the Debtor of all right, title and interest in, and all obligations and liability with respect to, the Assumed Contracts and such Assumed Liabilities.   Upon the occurrence of the Closing, this Sale Order shall be considered and constitute, for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Purchased Assets (including the Assumed Contracts) to Buyer pursuant to the Sale Agreement and/or a bill of sale or assignment transferring indefeasible right, title and interest in the Purchased Assets, including the Assumed Contracts, and all other rights and interests associated with or appurtenant to the

Purchased Assets, including, without limitation, warranty rights, intellectual property rights (including, without limitation, rights to all associated patents, regulatory approvals, permits, and registrations) and other non-executory contract rights, to Buyer all to the extent set forth in the Sale Agreement.

12.      **Qilu License Agreement**.  At the conclusion of the Auction, the Debtor chose the bid submitted by Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu") as the highest or otherwise best bid for a perpetual, irrevocable, exclusive, royalty-and-milestone-payment-free, and sublicensable license of the Debtor's rights with respect to products comprised of or containing the active pharmaceutical ingredient Plazomicin Sulfate (ACHN-490) in the People's Republic of China, Hong Kong, Macau and Taiwan (the "Territory") (collectively, the "Greater China Assets").  Notwithstanding anything set forth in this Sale Order in connection with the Greater China Assets, the rights of Qilu regarding the Greater China Assets will be as set forth in and governed by the Qilu License Agreement (as defined below).  Qilu's bid for the license in the Greater China Assets is subject to Qilu obtaining certain approvals from the People's Republic of China and entry of an order of this Court approving such sale.  Buyer submitted the second highest or otherwise best bid at the Auction for the outright purchase (not license) of the Greater China Assets and was chosen by the Debtor as the Back-up Bidder for the purchase of the ownership interest in the Greater China Assets.  The purchase by Buyer of the Purchased Assets identified in the Sale Agreement is subject to (i) Qilu's rights (including ownership rights to the extent conveyed to Qilu under the Qilu License Agreement) with respect to the Greater China Assets pursuant to the Qilu License Agreement, or (ii) subject to Buyer's right to deliver a Back-Up Bid Termination Notice as described below, in the event Qilu fails to close on the Qilu License Agreement relating to the Greater China Assets, the Debtor's conveyance to Buyer as

Back-up Bidder for the ownership rights of the Greater China Assets, or (iii) in the event Buyer fails to close on purchase of the ownership rights to the Greater China Assets, the Debtor's license of the Greater China Assets to such other third party chosen by the Debtor, in consultation with the DIP Lender, the Creditors' Committee and Buyer, and approved by this Court.  In no event shall Buyer, as Back-up Bidder for the ownership of the Greater China Assets, obtain such rights without entering into definitive documentation with the Debtor and paying the consideration offered by Buyer as part of its Back-up Bid accepted by the Debtor at the Auction which concluded on June 4, 2019.  If the ownership of the Greater China Assets is conveyed to Buyer as the Back-up Bidder, such conveyance will be effected through an amendment to the Sale Agreement or similar agreement or instrument between Buyer and the Debtor, pursuant to which Buyer's ownership rights to the Purchased Assets identified in the Sale Agreement will no longer be subject to any third party license for the Territory.  As agreed among the Debtor, Buyer and Qilu, the Debtor will seek this Court's approval of an order authorizing (a) the Debtor's entry into a license agreement with Qilu for the Greater China Assets (the "Qilu License Agreement"); the Qilu License Agreement shall be in substantially the form provided by the Debtor to Qualified Bidders prior to the Auction with only those changes agreed to among the Debtor, Qilu and Buyer, and (b) contemporaneous assignment by the Debtor of the Debtor's rights (other than the right to receive the consideration to be paid to the Debtor in exchange for the Greater China Assets licensed to Qilu) and obligations as the licensor thereunder to Buyer, and Buyer shall assume all of the Debtor's rights (other than the right to receive the consideration to be paid to the Debtor in exchange for the Greater China Assets licensed to Qilu) and obligations thereunder, and shall be bound by all of the terms and conditions of the Qilu License Agreement, as the successor licensor under the Qilu License

Agreement.  The Debtor and Buyer shall negotiate the provisions of the Qilu License Agreement with Qilu in good faith and use commercially reasonable efforts to finalize, execute, deliver, and file with this Court the Qilu License Agreement as soon as reasonably practicable. Notwithstanding any provision to the contrary, including the provisions set forth in paragraphs 49 and 50, if the Qilu License Agreement is not executed and the transactions contemplated thereunder are not consummated by October 15, 2019, Buyer may, at its sole discretion by giving written notice to the Debtor (the "Back-Up Bid Termination Notice"), terminate its obligations as the Back-Up Bidder for purchasing the Greater China Assets.  Upon receipt of the Back-Up Bid Termination Notice, the Debtor shall promptly cause Buyer's Good Faith Deposit with respect to the Back-Up Bid for the Greater China Assets to be returned to Buyer, and Buyer shall have no further obligation to acquire or pay for the Greater China Assets.  Notwithstanding anything to the contrary set forth in this Sale Order, the Sale Agreement or otherwise, no Trademarks (as defined in the Sale Agreement) in the Territory shall be conveyed by the Debtor at the Closing of the Sale Agreement.  The ownership rights with respect to the Trademarks in the Territory will be as set forth in or as governed by the Qilu License Agreement; *provided*, however, that in the event that Qilu fails to close on the Qilu License Agreement and ownership of the Greater China Assets is conveyed to Buyer as Back-up Bidder, then the Trademarks in the Territory shall be conveyed as part of that transaction; *provided*, further, however, that in the event that Buyer, as Back-up Bidder, fails to close on the purchase of ownership rights to the Greater China Assets,  the ownership rights with respect to the Trademarks in the Territory will be as set forth in or as governed by the license agreement with respect to the Greater China Assets to be entered into by the Debtor and such other third party as contemplated above.

13.     **Free and Clear**.  Except to the extent specifically provided in the Sale Agreement or this Sale Order, upon the occurrence of a Closing, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell, assign, convey, and transfer the Purchased Assets under the Sale Agreement to Buyer and assign the Assumed Contracts to Buyer.  Except, and solely, to the extent specifically provided in the Sale Agreement or this Sale Order, the sale and assignment of the Purchased Assets and the assignment of the Assumed Contracts to Buyer pursuant to the Sale Agreement vests Buyer with all right, title and interest of the Debtor in and to the Purchased Assets, free and clear of any and all Liens, Claims, Excluded Liabilities, and other liabilities of any kind or nature whatsoever (except for Assumed Liabilities), whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise, with all such Liens, Claims and Excluded Liabilities to attach only to the proceeds of the sale and assignment of the Purchased Assets with the same priority, validity, force, and effect as they now have in or against the Purchased Assets; *provided*, that the Debtor will cause the proceeds of the Sale to be remitted pursuant to paragraph 48 of this Sale Order.  The Sale Motion shall be deemed to have provided sufficient notice as to the sale and assignment of the Purchased Assets free and clear of all Liens, Claims and Excluded Liabilities in accordance with Local Rule 6004-1.  Following a Closing, no holder of any Lien or Claim on any of the Purchased Assets subject to the Closing may interfere with Buyer's enjoyment of the Purchased Assets, based on or related to such Lien or Claim, or any actions that the Debtor may take or fail to take in its Chapter 11 Case and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale.

14.    The term "Lien" as used in this Sale Order shall include, without limitation, all liens, interests, rights, encumbrances, rights of offset (including any right to offset or recoupment of any party to a contract or lease that is not an Assumed Contract in respect to Receivables due from such entities or their affiliates which are included in the Purchased Assets under the Sale Agreement), recoupment rights, reversionary rights, assignment rights, rights to specific performance, restrictions, leases, option rights or claims, obligations, liabilities, indentures, loan agreements, guaranties, demands, contractual commitments or interests in respect of the Debtor or any property of the Debtor, equity interests, licenses, instruments, conditional sale rights or other title retention agreements, rights of first refusal, reversionary rights, consent rights, contract rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, regulatory violations, judgments, decrees of any court or foreign or domestic governmental or quasi-governmental entity, debts arising in any way in connection with any agreements, acts or failures to act and reclamations rights whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected including, without limitation, the following: (i) any "Lien" as such term is defined in the Sale Agreement; (ii) any employment or labor agreements; (iii) all mortgages, deeds of trust, hypothecations, pledges, security interests or charges of any kind or nature; (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of the Debtor; (v) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (1974), as amended, (b) the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, as amended, (c) Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, (d) the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, as amended, (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, as amended, (f) the Worker Adjustment and Retraining Act of 1988, 29 U.S.C. §§ 2101 *et seq.*, (g) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, as amended, (h) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, as amended, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with any of the Debtor or any of its respective predecessors; (vi) any claims that might arise under or pursuant to any bulk sales or similar law; (vii) any claims that might arise under or pursuant to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (viii) any claims that might arise under or pursuant to theories of successor liability, including any theories on product liability grounds; (ix) any liability arising out of or relating to any contracts made or awarded by BARDA, including any clawback of funds granted to the Debtor; and (x) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing Date or relating to a period on or prior to the Closing Date, whether arising before or after the Closing Date.

15.    The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Liens, Claims and Excluded Liabilities (other than Assumed Liabilities) shall be self-executing and, without limiting the obligations of the Debtor under the Sale Agreement or hereunder including under paragraph 17 hereof, neither the Debtor nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or

other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

16.    With regard to the forms of, timing, and other terms concerning the consideration to be provided by Buyer to the Debtor as set forth in the Sale Agreement, Buyer is directed to comply with its respective obligations thereunder, and the Debtor, any liquidating trustee appointed in this Chapter 11 Case, and their successors and assigns, are hereby authorized to enforce all such provisions.  As further set forth in paragraph 55 hereof, the Bankruptcy Court shall retain exclusive jurisdiction with regard to any and all issues, disputes, controversies, causes of action, and/or claims with regard to, or arising under, such provisions, including, without limitation, the enforcement thereof .

17.    **Authorization to Creditors**.  On and immediately after a Closing Date, each of the Debtor's applicable creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any, in the Purchased Assets subject to the Sale, as such Liens may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien against or in the Purchased Assets shall not have delivered to the Debtor before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets subject to the Sale, then with regard to such Purchased Assets, (i) each of the Debtor and Buyer is authorized and directed to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Purchased Assets and (ii) each of the Debtor or Buyer, as applicable, is authorized and directed to file, register or otherwise record a certified copy of this

Sale Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Purchased Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

18.     **Authorization to Government Agencies**.    Each and every Governmental Authority, filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Sale Agreement or this Sale Order.  All such entities described above in this paragraph are authorized to strike all recorded Liens against the Purchased Assets from their records, official and otherwise.

19.     **Direction to Surrender Possession or Control**.  All persons or entities, presently or on or after a Closing Date, in possession or control of some or all of the Purchased Assets subject to the Sale, are directed to surrender possession or control of such Purchased Assets to Buyer on the Closing Date or at such time thereafter as Buyer may request.

20.     **Licenses and Permits**.    To the extent provided in the Sale Agreement and available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any Governmental Authorization, rights granted in respect of IP agreements, if any, or other Intellectual Property, constituting part of the Purchased Assets, any other license, permit, registration, and any other governmental approval of the Debtor with respect to the Purchased

Assets and the Assumed Contracts and all such licenses, permits, registrations, and Governmental Authorizations, Intellectual Property, and any other approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date.  To the extent any license or permit necessary for the operation of the business of the Debtor is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date and the Debtor is hereby authorized and directed to use commercially reasonable efforts to cooperate with Buyer in connection with any such application as Buyer deems reasonably necessary or desirable, subject to the provisions of the Sale Agreement; *provided*, however, that nothing in the Sale Agreement or this Sale Order, except for Debtor's obligations with respect to the Licensed Assets under paragraph 12 hereunder, shall be deemed to require the Debtor to remain a debtor in the Chapter 11 Case or maintain its corporate existence for any period of time beyond forty-five (45) days after the Closing Date in the Sale Agreement.

21.     To the extent provided by section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any Governmental Authorization or other approval, permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to Buyer on account of the filing or pendency of this Chapter 11 Case or the consummation of the Sale.

22.     **No Successor Liability**. Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, principals and shareholders (or equivalent) are not and shall not be (i) deemed a "successor" in any respect to the Debtor or its estate as a result of the consummation of the Sale contemplated by the Sale Agreement or any other event occurring in the Chapter 11 Case under any theory of law or equity (other than with respect to Assumed Liabilities assumed by Buyer pursuant to the Sale Agreement), (ii) deemed

to have, de facto or otherwise, merged, or consolidated with or into the Debtor or its estate, (iii) deemed to have a common identity with the Debtor, (iv) deemed to have a continuity of enterprise with the Debtor, or (v) deemed to be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.  Except for the Assumed Liabilities, the transfer of the Purchased Assets and the Assumed Contracts to Buyer under the Sale Agreement shall not result in Buyer or its affiliates, predecessors, successors, assigns, members, partners, directors, officers, employees, or principals and shareholders (or equivalent) (i) having any liability or responsibility for any claim against the Debtor or against an insider of the Debtor (including, without limitation, for any Excluded Liabilities), (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Lien or Excluded Liability, or (iii) having any liability or responsibility to the Debtor except as is expressly set forth in the Sale Agreement.  Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation described in the foregoing sentence (other than with respect to Assumed Liabilities), and the Sale Motion shall be deemed to have provided sufficient notice as to the Sale and assignment of the Purchased Assets free and clear of all such liabilities and obligations in accordance with Local Rule 6004-1.

23.    **Examples of No Successor Liability**. Without limiting the generality, effect or scope of the foregoing, as a result of and following the Closing of the Sale, Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, transferee liability, continuity of enterprise, mere continuation, labor law, bulk sales law, employment or

benefits law, alter ego, veil piercing, escheat, de facto merger or substantial continuity, whether

known or unknown as of the Closing Date, now existing or hereafter arising, whether legal or

equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated,

whether imposed by agreement, understanding, law, equity or otherwise with respect to the

Debtor or any obligations of the Debtor relating to the period prior to the Closing Date whether

arising before or after the Closing Date, including, without limitation, United States or foreign

pension liabilities or liabilities on account of any federal, state or other taxes arising, accruing or

payable under, out of, in connection with, or in any way relating to or calculated or determined

with respect to or based in whole or in any part upon the operation of the Purchased Assets or the

Assumed Contracts on or prior to the  Closing Date or any taxes in connection with, or in any

way related to, the cancellation of debt of the Debtor or its Affiliates.  The consideration given

by Buyer shall constitute valid and valuable consideration for the release of any potential claims

of successor liability against Buyer which releases shall be deemed to have been given in favor

of Buyer by all holders of Liens, Claims and Excluded Liabilities (other than Assumed

Liabilities) against the Debtor or the Purchased Assets.

24. **Injunction**. Subject to paragraph 52, and except to the extent expressly included

in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtor,

employees, former employees, all debt security holders, equity holders, licensors, administrative

agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and

regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract

parties, bidders, lessors, other parties in possession of any of the Purchased Assets at any time,

trade creditors and all other creditors holding any Liens, Claims or Excluded Liabilities of any

kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Purchased

Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the Assumed Contracts, the operation of the Debtor's business, on or prior to the Closing Date, the Sale (other than Buyer's obligations under the Sale Agreement, and all other ancillary agreements, documents or instruments entered into in connection with the Sale Agreement), or the transfer of the Purchased Assets or the Assumed Contracts, to Buyer shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against Buyer or any of its affiliates, predecessors, successors, or assigns or any of its current and former members, officers, directors, employees, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Purchased Assets. In connection with the foregoing, actions that are barred hereby include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or enforcement of any Lien, Claim, interest, or encumbrance, (iv) the assertion of any right of setoff, subrogation, recoupment, reversion, assignment or specific performance of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Sale Order, any actions contemplated or taken in respect hereof, or the Sale Agreement, and (vi) the revocation, termination or failure or refusal to renew any Governmental Authorization or

other license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with the Purchased Assets. Following the Closing Date, no Person that was the holder of a Lien on, in or against any of the Purchased Assets prior to the Closing Date shall interfere with Buyer's title to, license of, or use and enjoyment of the Purchased Assets based on or related to such Lien, or any actions that the Debtor may take in the Debtor's case.

25.     **No Bulk Sales; No Brokers**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the other transactions contemplated under the Sale Agreement or this Sale Order.  Other than Cassel Salpeter & Co., LLC ("Cassel"), no broker, finder, or financial advisor was involved in consummating the Sale or the other transactions, and, other than Cassel, no commissions are due to any person or entity in connection with the Sale or the other such transactions.  Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale or the other transactions based upon any arrangement made by or on behalf of the Debtor; *provided*, that the Debtor is authorized to apply proceeds of the Sale to the fees and expenses of Cassel in accordance with the order of this Court approving Cassel's engagement including, without limitation, any provisions in such order regarding determination of the value of any consideration received by the Debtor.

26.     **Fees and Expenses; Indemnity**.   Any amounts payable or otherwise reimbursable by the Debtor under the Sale Agreement or any of the documents delivered by the Debtor in connection with the Sale Agreement, including without limitation (i) any allowed claims for breach thereof, (ii) any amounts relating to the indemnity provided by the Debtor under the Sale Agreement, if any, and (iii) any purchase price or other adjustments, shall be paid

under the terms of and in the manner provided in the Sale Agreement without further order of the

Bankruptcy Court, as an allowed administrative claim in an amount equal to such payment in

accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be

discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by

written agreement with Buyer or its successors or assigns (such agreement to be provided in

Buyer's or its successor's or assign's respective sole discretion).

27.    **Assumption and Assignment of Assumed Contracts**.    Under sections 105(a),

363 and 365 of the Bankruptcy Code, and subject to and conditioned upon Closing, the Debtor's

assumption of the Assumed Contracts and assignment thereof to Buyer, free and clear of all

Liens, Claims and Excluded Liabilities (other than Assumed Liabilities) pursuant to the terms set

forth in the Sale Agreement is hereby approved, and the requirements of sections 365(b)(1) and

365(f)(2) (including section 365(b)(3) to the extent applicable) of the Bankruptcy Code with

respect thereto are hereby deemed satisfied.    Each of the Contract Counterparties is hereby

forever barred, estopped and permanently enjoined from raising or asserting against the Debtor

or the property of any of such parties, any assignment fee, default, breach, claim, pecuniary loss,

liability, or obligation (whether known or unknown as of the Closing Date, now existing or

hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent,

liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or

otherwise) arising under or out of, in connection with, or in any way related to the Assumed

Contracts existing as of the Closing Date or arising by reason of the assumption, assignment

and/or the Closing except to the extent constituting an Excluded Liability under the Sale

Agreement (other than the Assumed Liabilities).    Notwithstanding the foregoing, pursuant to the

terms of the Sale Agreement, Buyer shall be liable for all obligations and liabilities arising after,

relating to and required to be performed during the period following the Closing Date under the Assumed Contracts, all of which shall constitute Assumed Liabilities, and the Debtor shall not be liable for any such obligations or liabilities.

28.     Each of the Assumed Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with its terms as of the date of this Sale Order, subject to any amendments or modifications agreed to between a Contract Counterparty and Buyer.  Upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assumed Contracts; *provided*, that, in the event Buyer is not the buyer of the assets related to the Debtor's C-Scape program (as that asset is described in that certain asset purchase agreement dated June 20, 2019 by and between the Debtor and Buyer (the "C-Scape Assets")), Buyer agrees to use reasonable best efforts to cooperate with the Debtor and any purchaser of the C-Scape Assets (the "C-Scape Buyer") to secure for the C-Scape Buyer any rights and/or benefits afforded under any Assumed Contracts that relate to both the Purchased Assets and C-Scape Assets; *provided*, further, that any asset purchase agreement disposing of the C-Scape Assets shall provide that the C-Scape Buyer will be responsible for a reasonable allocation of any costs related thereto.  The assignment of each of the Assumed Contracts is deemed to be made in good faith under, and is entitled to the protections of, section 363(m) of the Bankruptcy Code.

29.     **Adequate Assurance**.  Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code (including section 365(b)(3) to the extent applicable). All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for

the assumption by the Debtor and assignment to Buyer of the Assumed Contracts have been satisfied.

30.  **Anti-Assignment Provisions Unenforceable**.  No sections or provisions of the Assumed Contracts that purport to (i) prohibit, restrict, or condition the Debtor's assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the Contract Counterparties; (ii) authorize the termination, cancellation, or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtor or similar circumstances; (iii) declare a breach or default as a result of a change in control in respect of the Debtor; or (iv) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assumed Contracts, or modification of any term or condition upon the assignment of an Assumed Contract or the occurrence of the conditions set forth in subsection (ii) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e).  The entry of this Sale Order constitutes the consent of the Contract Counterparties to the assumption and assignment of such agreements without the necessity of obtaining such party's consent, written or otherwise, to such assumption or assignment.  All Assumed Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the applicable Cure Amounts in accordance with the Sale Agreement (and subject to Section 2.5(e) of the Sale Agreement), and to any amendments or modifications agreed to between a Contract Counterparty and Buyer.

31.  **No Fees for Assumption and Assignment**.  Other than Assumed Liabilities, there shall be no rent accelerations, penalties, assignment fees, increases or any other fees

charged to Buyer, its successors or assigns, or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

32.     **Cure Amounts**.   Payment of the Cure Amounts by Buyer as set forth on the Contract & Cure Schedule for the Sale Agreement and also set forth on Exhibit B hereto (or such other amount or such other terms as may be agreed to by Buyer and the Contract Counterparties to the applicable Assumed Contract or Additional Contract (as defined below)) in accordance with the Sale Agreement is hereby authorized and directed.   All defaults or other obligations shall be deemed cured and shall no longer exist upon the payment or other satisfaction by the Debtor of such Cure Amounts against which no timely objections have been properly filed and served (or if filed and served, overruled) in accordance with the Assignment and Rejection Procedures (or such other amount or such other terms as may be agreed to by Buyer and the Contract Counterparties to the applicable Assumed Contract or, with respect to any Additional Contract, as otherwise ordered by the Court) and, for the avoidance of doubt, no Contract Counterparty shall be entitled to a claim against the Debtor or the Debtor's estate for any such default.   Except for the Cure Amounts set forth on Exhibit B filed and served in accordance with the Assignment and Rejection Procedures (or such other amount as may be agreed to by Buyer and the Contract Counterparties to the applicable Assumed Contract or, with respect to any Additional Contract, as otherwise ordered by the Court), there are no defaults existing under the Assumed Contracts, nor shall there exist any event or condition existing on the Closing Date which, with the passage of time or giving of notice, or both, would constitute such a default.   For the avoidance of doubt, the Debtor's estate shall not be responsible for the payment of any Cure Amounts and Buyer's payment of Cure Amounts shall not (i) be deemed a purchase price adjustment that reduces the overall consideration received by the Debtor's estate, or (ii) reduce

the amount of the cash and contingent consideration that is otherwise payable by Buyer under the Sale Agreement; *provided* that, notwithstanding anything to the contrary herein, as set forth in (and in accordance with) Section 2.5(e) of the Sale Agreement, in the event that the aggregate Cure Amounts for the Assumed Contracts to be assumed and assigned thereunder exceed the Target Cure Amount, the Closing Payment shall be reduced on a dollar-for-dollar basis.

33.     **Notice of Assumption and Assignment**.  In accordance with the Assignment and Rejection Procedures, the Debtor has served the Assignment and Rejection Notice that the Debtor has filed with the Bankruptcy Court on all of the Contract Counterparties identified on the schedule attached thereto.  The schedule to the Assignment and Rejection Notice included (i) the title of the Assumed Contract, (ii) the name of the counterparty to the Assumed Contract, (iii) any applicable Cure Amounts, (iv) a notice that each Assumed Contract may be assumed by the Debtor and assigned to the Successful Bidder submitting the highest or otherwise best bid for the Debtor's assets, and (v) the deadline by which any such Assumed Contract counterparty must file an objection to the proposed assumption and assignment.  In addition, Buyer's identity has been disclosed to each of the Contract Counterparties.  No other or further notice is required.

34.     Any Contract Counterparties to an Assumed Contract who have not timely filed and served an objection in accordance with the Assignment and Rejection Procedures shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assumed Contract, and such Assumed Contract shall be deemed assumed by the Debtor and assigned to Buyer on the Closing Date pursuant to this Sale Order.  All Claims of a counterparty to an Assumed Contract that is assumed by Buyer which arise from or are related to such counterparty's Assumed Contract shall be void, and all proofs of claim filed by such counterparty, whether filed prior to or after the date of entry of this Sale Order, asserting a claim

that arises from or is related to such counterparty's Assumed Contract, shall be deemed automatically expunged from the Debtor's registry of claims without the need for any further action and neither the Debtor nor Buyer shall be liable for the same.

35.     From the date of the entry of this Sale Order, the Debtor may, in its sole discretion, settle objections to assumption and assignment of any Assumed Contract, including to proposed Cure Amounts, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Amount); *provided*, that notice to and consent of Buyer shall be required to the extent Buyer is liable for such Cure Amount pursuant to the Sale Agreement.   Unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assumed Contract to Buyer, provided Buyer has agreed to assume such contract in accordance with the terms of the Sale Agreement, without the necessity of obtaining any further order of the Bankruptcy Court.

36.     No executory contract or unexpired lease as to which a Contract Counterparty has timely filed and served an objection in accordance with the Assignment and Rejection Procedures shall be considered an Assumed Contract under this Sale Order unless and until any timely objection to the assumption and assignment of such executory contract or unexpired lease has been resolved and, if the Court orders a Cure Amount exceeding the Cure Amount proposed by the Debtor, Buyer consents to such assumption and assignment.

37.     **Addition / Removal of Contracts**.   Notwithstanding anything to the contrary contained herein or in the Sale Agreement, prior to the Closing Date under the Sale Agreement, Buyer may in its sole discretion add or remove contracts from the Contract & Cure Schedules attached to the Sale Agreement at any time.   During the Election Period under the Sale

Agreement, Buyer will have the right but not the obligation to require that the Debtor use its commercially reasonable efforts to assume and assign to Buyer or its designee(s) (i) any additional Executory Contracts that Buyer determines, in its sole discretion, is material to the operation of the Plazomicin Business, but which was not otherwise included on Schedule 3.8 of the Seller Disclosure Schedule to the Sale Agreement, or (ii) any Specified Contract that was removed from the Contract & Cure Schedule to the Sale Agreement prior to the Closing ("Additional Contracts") for no additional consideration; *provided*, that Buyer or its designee(s) will pay to the Debtor the full Cure Amount for each Additional Contract that it assumes, and during the Election Period, Buyer shall pay to the Debtor on a current basis any post-petition administrative expense arising under only those Additional Contracts, if any, which Buyer or its designee(s) decides to assume; *provided, further, however*, that the assumption and assignment of such Additional Contracts and payment of such Cure Amount and additional post-petition administrative expenses shall not (i) be deemed a purchase price adjustment that reduces the overall consideration received by the Debtor's estate, or (ii) reduce the amount of the cash and contingent consideration that is otherwise payable by Buyer under the Sale Agreement.  Within three (3) Business Days of receipt of written notice from Buyer directing the Debtor (with notice provided to the Creditors' Committee) to seek the assumption and assignment of any Additional Contract, the Debtor shall promptly file with the Bankruptcy Court a notice of proposed assignment (each, an "Additional Contracts Notice") which Assignment Notice shall include a Section 365 Order.  The Additional Contracts Notice and Section 365 Order shall be in form and substance reasonably acceptable to Buyer.  The Debtor shall file the Additional Contracts Notice and serve it on all Persons entitled to notice thereof, all in accordance with the applicable provisions of the Bankruptcy Code and applicable order(s) of the Bankruptcy Court, including

the Bidding Procedures Order and this Sale Order.  Upon entry of the Section 365 Order (unless

such Section 365 Order shall have been stayed, modified, reversed or amended), such Additional

Contracts shall be deemed to be Assumed Contracts for all purposes under the Sale Agreement.

Buyer shall promptly reimburse the Debtor for all reasonable costs and expenses of the Debtor

incurred in complying with the terms of Section 5.11 of the Sale Agreement.  Nothing in the Sale

Agreement or this Sale Order, except for Debtor's obligations with respect to the Licensed

Assets under paragraph 12 hereunder, shall be deemed to require the Debtor to remain a debtor

in the Chapter 11 Case or maintain its corporate existence for any period of time beyond forty-

five (45) days after the Closing Date in the Sale Agreement.

38.    Contract Counterparties seeking to object to the assumption and assignment of

any contracts designated as an Additional Contract, other than the Specified Contracts, shall have

ten (10) calendar days after the Debtor has sent notice to such Contract Counterparties of the

amended Assumed Contracts and Cure Schedule to file and serve any objection to the

assumption and assignment of the Additional Contracts and proposed Cure Amount, if any, in

accordance with the Assignment and Rejection Procedures (as applicable, the "Additional

Assignment Objection").

39.    If a timely objection is filed to the assumption and assignment of an Additional

Contract (other than a Specified Contract), and cannot be resolved consensually, the Bankruptcy

Court shall resolve such objection at a hearing to be held (i) on or before five (5) calendar days

from the timely filing of the Additional Assignment Objection to the extent the Court's calendar

permits or (ii) such other date designated by the Bankruptcy Court.  Unless the Bankruptcy Court

orders otherwise (or, if the Court orders a Cure Amount exceeding the Cure Amount proposed by

the Debtor and Buyer does not consent), contemporaneously with the resolution of any such

objection, the Additional Contract underlying such objection shall be deemed an Assumed Contract that has been assumed and assigned to Buyer without the necessity of obtaining any further order of the Bankruptcy Court.

40.     If no objection is timely filed and served to the assumption and assignment of an Additional Contract (other than a Specified Contract), such Additional Contract shall be deemed an Assumed Contract, the payment of the proposed Cure Amount (or such other amount or terms as agreed upon by Buyer and the Contract Counterparties), if any, shall be authorized, and the assumption by the Debtor and assignment to Buyer of such Assumed Contract shall be hereby approved pursuant to this Sale Order.  Buyer shall be responsible for the payment of all Cure Amounts under the Assumed Contracts and Additional Contracts; *provided* that, as set forth in (and in accordance with) Section 2.5(e) of the Sale Agreement, in the event that the aggregate Cure Amounts for the Assumed Contracts to be assumed and assigned thereunder exceed the Target Cure Amount, the Closing Payment shall be reduced on a dollar-for-dollar basis.

41.     **Direction to Contract Counterparties**.  All Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable request of Buyer, and shall not charge the Debtor or Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale involving Buyer.

42.     Nothing in this Sale Order, the Sale Motion, the Assignment and Rejection Notice (as amended from time to time), or any notice or any other document is or shall be deemed an admission by the Debtor that any contract is an executory contract or, unless otherwise specified in the Sale Agreement, must be assumed and assigned pursuant to the Sale Agreement, in order to consummate the Sale.

43.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Sale Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtor and Buyer that the Sale Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order.  Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

44.    **Failure to Enforce Assumed Contracts**.  The failure of the Debtor or Buyer at any time to enforce one or more terms or conditions of any Assumed Contract shall not constitute a waiver of any such terms or conditions, or of the Debtor's or Buyer's rights to enforce every term and condition of the Assumed Contracts.

45.    **Lease**.  Notwithstanding anything in this Sale Order or the Sale Agreement to the contrary, that certain lease dated as of August 12, 2016, as amended by that certain First Amendment to Lease dated as of April 7, 2017, Second Amendment to Lease dated as of July 20, 2017, Third Amendment to Lease dated as of August 17, 2017, and that certain Fourth Amendment to Lease dated as of November 29, 2018 (collectively, as amended, the "Lease"), between AP3-SF2 CT South LLC (the "Landlord") and the Debtor for certain premises (the "Premises") in that certain building located at One Tower Place, South San Francisco, California, any leasehold estate created by the Lease, any subleases or sublease estates related thereto, any security deposits or letters of credit related to the Lease or any sublease, or any fixtures constituting a portion of the Premises within, on, or about the Premises is not, and shall not be deemed to be, assumed by the Debtor, assumed by the Debtor and assigned to Buyer, sold by the Debtor to Buyer, or rejected by the Debtor, pursuant to this Sale Order or any of the underlying

agreements with Buyer, and the respective rights, remedies, defenses, powers, duties, and obligations of the Debtor and the Landlord arising under, or in connection with, the Lease and Premises are hereby preserved.   The Debtor shall retain all rights afforded to it under the Bankruptcy Code to assume, assume and assign, or reject the Lease and/or any subleases related thereto notwithstanding entry of this Sale Order.

46. **Rejection of Hovione Agreement; Release of Hovione Claims**.   As agreed between the Debtor and Hovione Limited ("Hovione"), upon the effectiveness of a new supply agreement (which effectiveness shall occur no later than the Closing of the Sale to Buyer) between Hovione and Buyer reflecting the terms agreed to between Hovione and Buyer at the Auction and otherwise reflecting the terms agreed to by Hovione and Buyer (the "New Hovione Agreement"), the Validation and Manufacturing Agreement, dated March 6, 2017, between the Debtor and Hovione, and all Work Plans (as defined therein), and all other agreements, instruments, or documents entered into or delivered in connection therewith, as any of the foregoing may have been amended, modified, or supplemented (the "Existing Hovione Agreement") shall automatically be rejected by the Debtor pursuant to section 365 of the Bankruptcy Code.  As further agreed between the Debtor and Hovione, upon the effectiveness of the New Hovione Agreement, (i) Hovione, its affiliates and subsidiaries, and all of their respective current and former officers, directors, principals, employees, members, managers, advisors, attorneys, financial advisors, investment bankers, or agents (collectively, the "Hovione Parties"), by way of this Sale Order, unconditionally release the Debtor, its estate, affiliates and subsidiaries, and all of their respective current and former officers, directors, principals, employees, members, managers, advisors, attorneys, financial advisors, investment bankers, and agents (collectively, the "Debtor Parties") and (ii) the Debtor Parties, by way of this Sale Order,

unconditionally release the Hovione Parties, in each case from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever in connection with, or in any way relating to, the Debtor, the business of the Debtor or the Debtor's conduct thereof, or the Chapter 11 Case, including, without limitation, arising from or in connection with the Existing Hovione Agreement, the rejection by the Debtor of the Existing Hovione Agreement, the New Hovione Agreement, and any claims arising, or which may otherwise be asserted, under chapter 5 of the Bankruptcy Code, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, whether for tort, contract, violation of federal or state securities law or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the date of entry of this Sale Order.  Notwithstanding anything else herein to the contrary, if the New Hovione Agreement has not become effective as of the Closing of the Sale to Buyer under the Sale Agreement, Hovione's rights to assert Claims against the Debtor with respect to the rejection of the Existing Hovione Agreement are and shall be fully preserved.  Any Product (as defined in the Existing Hovione Agreement) and other materials in Hovione's possession as of the date of this Sale Order (including in any Hovione warehouse) is the exclusive property of Hovione and is not property of the Debtor's estate, nor is it a Purchased Asset under the Sale Agreement; provided, however, that notwithstanding anything to the contrary contained herein, Batch number seventeen (17), designated as "17KJ01.HQ00018," shall be the sole and exclusive property of Buyer and shall be deemed to be Purchased Asset under the Sale Agreement.  On the Closing Date under the Sale Agreement, Hovione shall deliver such Batch at the location designated by Buyer and Buyer shall reimburse Hovione for any delivery fees (evidenced by

documentary records) relating to such Batch after such delivery.  Nothing in this Sale Order or the Sale Agreement shall have any effect on, impair, or otherwise modify Hovione's or Buyer's rights or obligations under the New Hovione Agreement.

47.     **Cardinal Health**.  Notwithstanding any other provision of this Sale Order, the Sale Agreement, or any order confirming a plan or dismissing this Case to the contrary, (i) the *Final Order Pursuant to 11 U.S.C. §§ 105(a), 363, 1107, and 1108 and Fed. R. Bankr. P. 6003 and 6004 Authorizing Debtor to (I) Honor Certain Prepetition Obligations to Customers and to Continue Customer Programs and (II) Pay Medicaid, Medicare and Other Obligations* [D.I. 144] shall remain in full force and effect in all respects; (ii) the transfer of the Purchased Assets to Buyer shall not be free and clear of, and shall not impair in any respect, any setoff or recoupment rights or other affirmative defenses to payment held by Cardinal Health 108 LLC, Cardinal Health P.R. 120, Inc., and/or Cardinal Health 105, Inc. (collectively, "Cardinal Health"), as an obligor of the Debtor's accounts receivables, pursuant to the terms of the contracts giving rise to such accounts receivable and applicable law, whether or not such contracts are being assumed and assigned by the Debtor to Buyer, including, without limitation, all return, refund, rebate, chargeback, and credit rights under such contracts; and (iii) and the rights of the Debtor to assert all available defenses thereto, including, without limitation, that any or all such rights are barred under applicable law, are hereby preserved.

48.     **No Waiver of Rights Under the DIP Loan Documents and Prepetition Loan Documents.**  Except to the extent provided in paragraph 46 hereof ("Rejection of Hovione Agreement; Release of Hovione Claims"), nothing in this Sale Order shall be deemed to waive, release, extinguish, or estop the Debtor, its estate or its creditors from asserting, or impairing or diminishing such rights to assert, any right (including any right of recoupment), claim, cause of

action, defense, offset or counterclaim in respect of any Excluded Asset or other assets of the

Debtor remaining after the completion of the Closing.  All proceeds from the consummation of

the Sale shall be treated in accordance with the provisions of the DIP Credit Agreement and the

applicable order of the Bankruptcy Court approving the Debtor's post-petition financing

(collectively, the "DIP Order"), including, but not limited to, the provisions in the DIP Order

governing the use of Cash Collateral (as defined therein); *provided*, notwithstanding anything to

the contrary contained in this Sale Order or in any of the Sale Documents, from and after the

closing of the Sale, the Debtor is hereby authorized and directed to hold all cash proceeds of the

Sale in a segregated account and, pending further order of the Bankruptcy Court, such proceeds

shall not be used for any purpose, other than for payment of obligations arising under the key

employee retention plan that was approved by the Bankruptcy Court.  Nothing in this Sale Order

shall (i) be deemed a waiver of the rights and remedies of the DIP Lender under the DIP Credit

Agreement, any documents relating thereto, or the DIP Order; (ii) affect in any way the validity,

perfection, priority or enforcement of the liens and claims granted to the DIP Lender under or

pursuant to the DIP Credit Agreement and DIP Order; (iii) affect or limit in any way the validity,

perfection, priority or enforcement of the Prepetition Loan Liens, the Prepetition Loan

Obligations, the Prepetition Loan Collateral (each as defined in the DIP Order), or the Adequate

Protection Liens, Adequate Protection Obligations, Adequate Protection Claims, (each as defined

in the DIP Order) or any other rights and protections granted to the Prepetition Lender under the

Prepetition Loan Agreement (as defined in the DIP Order) and the DIP Order; or (iv) affect in

any way the validity or priority of the KEIP/KERP Plan Amount (as defined in the DIP Order),

all of which shall attach to the proceeds of the Sale.  For the avoidance of doubt, nothing herein

shall affect the Creditors' Committee's rights to commence a Challenge or other rights as set

forth in the DIP Order.  Notwithstanding anything to the contrary in the Bidding Procedures, Bidding Procedures Order, DIP Loan Agreement, or DIP Order, the date by which the Sale approved pursuant to this Sale Order must be closed is fifteen (15) days after the date of entry of this Sale Order, and the date by which the license to Qilu of the Greater China Assets must close shall be set forth in the Qilu License Agreement and/or an order of this Court approving the Qilu License Agreement.

49. **Back-Up Bids**.  At the Auction, the Debtor designated (i) Altamont Pharma Fund II, LLC as the Back-up Bidder for the assets that are subject to the Sale Agreement, and (ii) Buyer as the Back-up Bidder for the purchase of the ownership interest in the Greater China Assets that are subject to the Qilu License Agreement.  Subject to the right of Buyer to deliver a Back-up Bid Termination Notice in accordance with paragraph 12, the Back-up Bids of the Back-up Bidders shall remain open and irrevocable as set forth in the Bidding Procedures and Bidding Procedures Order, and in the event that a Successful Bidder shall fail to close for whatever reason on the Purchased Assets that are the subject of the Sale Agreement or Qilu License Agreement, as applicable, the Debtor and the applicable Back-up Bidder shall, subject to the right of Buyer to deliver a Back-up Bid Termination Notice in accordance with paragraph 12, close on the sale of such assets, subject to final negotiations on such Back-up Bidder's bid and executing a sale agreement with such Back-up Bidder, within the time period set forth in the Bidding Procedures and Bidding Procedures Order.

50. **Good Faith Deposits**.  The Good Faith Deposits shall be returned to each Qualified Bidder as set forth in the Bidding Procedures, *provided* that, notwithstanding anything to the contrary in the Bidding Procedures or Bidding Procedures Order but subject to the right of Buyer to deliver a Back-up Bid Termination Notice in accordance with paragraph 12, the good

faith deposit of a Successful Bidder or the Back-up Bidders shall be retained by the Debtor in the event that such bidder, in the reasonable discretion of the Debtor, and after five (5) business days' written notice to such bidder, shall fail to proceed with, or consummate, its bid, including, without limitation, by failing to negotiate in good faith with the Debtor, failing to execute its asset purchase agreement, or failing to close on the sale in accordance with the terms of its asset purchase agreement which is the subject of its bid.

51.     **Certain Chapter 5 Actions and Claims**.   Notwithstanding anything to the contrary contained in the Sale Agreement, including, without limitation, Schedule 2.1(i) thereto, upon the Closing Date, Buyer shall receive only those Chapter 5 Actions and Claims that are related to the Purchased Assets under the Sale Agreement and the Debtor's Professionals retained in the Chapter 11 Case; *provided*, the Purchased Assets shall not include any Chapter 5 Actions and Claims against any of the Releasees (as defined in the applicable order of the Bankruptcy Court authorizing the Debtor to incur post-petition debtor-in-possession financing) or Hovione (provided the New Hovione Agreement is effective); *provided, further*, that (i) except for those claims and/or causes of action against contract counterparties whose contracts are assumed by Buyer, no claims and/or causes of actions under chapter 5 of the Bankruptcy Code are being purchased by, or transferred to, Buyer, (ii) no claims and/or causes of action against the Debtor's current and/or former directors or officers, whether under the Bankruptcy Code, state or federal law, or otherwise, are being purchased by, or transferred to, Buyer and (iii) no claims and/or causes of action against the Debtors' directors, officers and/or employees related to any pre-Petition bonus payments are being purchased by, or transferred to, Buyer and all such claims and causes of action in clauses (i) through (iii) herein are preserved for

the benefit of the estate and, if applicable, any liquidating trustee that shall be appointed in this case.

52.     **Binding Order**.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtor, Buyer, the Back-up Bidders, and their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of the Debtor (whether known or unknown), all non-Debtor parties to any Assumed Contracts, all Governmental Authorities, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.  The Sale Agreement and the Sale shall not be subject to rejection or avoidance under any circumstances.  This Sale Order and the Sale Agreement shall inure to the benefit of the Debtor, its estates, its creditors, Buyer and their respective successors and assigns.

53.     **No Stay of Order**.  The provisions of Bankruptcy Rules 6004 and 6006, and to the extent applicable under Bankruptcy Rules, Rules 54(b) and 62(a) of the Federal Rules of Civil Procedure, staying the effectiveness of this Sale Order for fourteen (14) days are hereby waived, and this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Any party desiring to appeal this Sale Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

54.    **Lift of Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow Buyer to deliver any notice provided for in the Sale Agreement and allow Buyer to take any and all actions permitted under the Sale Agreement.

55.    **Retention of Jurisdiction**.    The Bankruptcy Court shall retain exclusive jurisdiction to (i) interpret, implement and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the Sale Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, (ii) decide any disputes concerning this Sale Order, the Sale Agreement or the rights and duties of the parties hereunder or thereunder or any issues relating to the Sale Agreement and this Sale Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, and (iii) enforce the injunctions set forth herein.

56.    **Subsequent Plan Provisions**.    Unless otherwise provided herein, nothing contained in any chapter 11 plan confirmed in the Debtor's case or any order confirming any such plan or any other order in the Debtor's case (including any order entered after any conversion of this case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Sale Agreement or this Sale Order and, to the extent of any such conflict, subject to paragraph 60, the terms of this Sale Order and the Sale Agreement shall control.

57.    **Further Assurances**.  From time to time, as and when requested by the other, the Debtor and Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in Buyer its right, title and interest in and to the Purchased Assets and the Assumed Contracts, subject to the provisions of the Sale Agreement.

58.    **Provisions Related to Governmental Authorities**.  Nothing contained in this Sale Order and any implementing Sale Documents (collectively, the "Documents") shall: (i) authorize the assumption, sale, assignment or other transfer to Buyer of any agreements, grants, grant funds, licenses, permits, authorizations, contracts, leases, including, but not limited to, the agreements with the federal government listed on the *Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases* [D.I. 194], or other interests of the federal government (collectively, "Federal Interests"), without compliance by the Debtor and/or Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (ii) be interpreted to include any contracts between the United States and the Debtor within the term "Assumed Contracts"; (iii) be interpreted to set cure amounts or require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (iv) affect the government's rights to offset or recoup any amounts due under, or relating to, the Federal Interests or the rights of the Debtor or Buyer to assert all available defenses thereto, including, without limitation, that any or all such rights are barred under applicable non-bankruptcy law, are hereby preserved; or (v) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C.

Section 1334 (as limited by any other provisions of the United States Code).  In addition, nothing in the Documents (i) releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order or (ii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.  Notwithstanding the foregoing, nothing in this paragraph 58 shall be interpreted to require Buyer to assume any contracts, agreements or licenses that the Debtor had entered into with any Governmental Authority, including but not limited to the United States.  Without limiting the foregoing and for the avoidance of doubt, the Debtor's ownership rights to Intellectual Property developed under U.S. federally-funded grants and contracts are subject to the United States' rights under applicable statutes, regulations and/or contracts governing the terms of such federal funding.  As used in this paragraph 58, the term "Intellectual Property" shall have the meaning ascribed to it in the Sale Agreement [D.I. 292-1]; the terms "Product" and "Regulatory Approval" shall have the meanings ascribed to them in the Sale Agreement [D.I. 292-1]; and the term "Inventory" shall have the meaning ascribed to it under Section 2.1(a) of the Sale Agreement.  The term "Intellectual Property" shall also include "Subject Inventions" as defined under 48 C.F.R. § 27.301 and "Data" as defined under 48 C.F.R. § 27.401.  Such rights of the United States include, but are not limited to, nonexclusive, nontransferable, irrevocable, paid up licenses to practice, or have practiced for or on its behalf, the Intellectual Property throughout the world, as provided by contracts between the United States and the Debtor.  Such rights of the United States shall also include licenses to data developed and/or funded by the United States under federally-funded contracts between the United States and the Debtor.  To the extent that the contracts between the United States and the

Debtor granted the United States any property rights in any of the Debtor's Inventory pursuant to F.A.R. 52.245-1, such rights are expressly preserved. Additionally, the United States has rights to Intellectual Property developed by the Debtor under the Bayh-Dole Act, 35 U.S.C. §§ 200-212, as implemented by 37 C.F.R. Part 401. Nothing in the Documents shall waive, alter, or otherwise limit the United States' rights to the Intellectual Property and Inventory referenced in this paragraph.

59.   **Transitional Services Agreement**.  As part of the Sale, the Debtor and Buyer are entering into a transitional services agreement (the "TSA") whereby the Debtor and Buyer will supply one another with certain services during the Post-Closing Access and Cooperation Period, or such shorter period as provided in the exhibits to the TSA, on the terms and conditions provided in the TSA. A copy of the TSA is attached hereto as Exhibit C. The TSA (and all ancillary documents related thereto) is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor and Buyer are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the TSA and to execute, deliver and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the TSA and this Sale Order.

60.   **Governing Terms**.  Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Bidding Procedures Order or any other prior order or pleading in this Chapter 11 Case, or the terms of the Sale Agreement (including all ancillary documents executed in connection with the Sale Agreement), this Sale Order shall govern.

61.   **Headings**.  The headings in this Sale Order are for purposes of reference only and

shall not limit or otherwise affect the meaning of the Sale Order.

Wilmington, Delaware

**Dated: July 23rd, 2019**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**