## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Achaogen, Inc. | Case No. 19-10844 (BLS) |
| Debtors. |  |
| Edward E. Neiger, not individually but as Plan Trustee of the Achaogen Plan Trust, |  |
| Plaintiff, | Adv. Proc. No. 21-50479 (BLS) |
| v. |  |
| Cipla USA, Inc. |  |
| Defendant. |  |

## DEFENDANT CIPLA USA, INC.'S OPENING BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 8 AND 12(b)(6)

Dated: August 6, 2021
Wilmington, Delaware

Jeremy W. Ryan (No. 4057)
John A. Sensing (No. 5232)
Jesse L. Noa (No. 5973)
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
           jsensing@potteranderson.com
           jnoa@potteranderson.com

*Attorneys for Defendant Cipla USA, Inc.*

7311975

## TABLE OF CONTENTS

I.     INTRODUCTION……………………………………………………………… 1

II.    BACKGROUND FACTS...…………………………………………………… 1

    A.    THE CHINA ASSETS…………………………………………………... 2

    B.    THE C-SCAPE ASSETS…………………………………………………... 4

    C.    PLAINTIFF'S COMPLAINT…………………………………………… 5

III.    LEGAL STANDARDS………………………………………………….. 6

IV.    FOR MULTIPLE COUNTS, THE COMPLAINT FAILS TO STATE A CLAIM…... 7

    A.    All Three of Plaintiff's Tortious Interference Claims Must be Dismissed……. 7

        1.    Count IV Fails to Plausibly Allege a Claim for Tortious Interference with Contract……………………………………………………... 7

        2.    Count V Fails to Plausibly Allege a Claim for Tortious Interference of Business Relations…………………………………………………. 8

        3.    Count VI Fails to Plausibly Allege a Claim for Tortious Interference With Prospective Economic Advantage……………………………… 11

    B.    Count VIII Fails to Plausibly Allege a Claim for Promissory Estoppel……… 12

    C.    Count IX Fails to Plausibly Allege a Breach of the Implied Covenant of Good Faith and Fair Dealing…………………………………………… 13

    D.    Count X Fails to Plausibly Allege a Claim for Contempt of Court………….. 15

V.    CONCLUSION……………………………………………………….. 16

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Alliance Data Sys. Corp. v. Blackstone Cap. P'rs V L.P.*,
    963 A.2d 746 (Del. Ch. 2009)...................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................6

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
    2009 WL 1124451 (Del. Ch. Apr. 20, 2009) ...........................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................6

*Colbert v. Goodville Mut. Cas. Co.*,
    2011 WL 441363 (Del. Super. Jan. 31, 2011) .....................................7-8

*Collab9, LLC v. En Pointe Techs. Sales, LLC*,
    2019 WL 4454412 (Del. Super. Sept. 17, 2019) ....................................14

*Constar, Inc. v. Nat'l Distribution Centers, Inc.*,
    101 F. Supp. 2d 319 (E.D. Pa. 2000) ..................................................12

*Davis v. Eagle Legacy Credit Union (In re Davis)*,
    430 B.R. 902 (Bankr. D. Colo. 2010) ..................................................16

*DiGenova v. UNITE HERE Local 274*,
    Case No. 20-2724, 2021 WL 796418 (3d Cir. Mar. 2, 2021)....................7

*Hydrogen Master Rights, Ltd. v. Weston*,
    228 F. Supp. 3d 320 (D. Del. 2017)....................................................12

*IBM Corp. v. Comdisco, Inc.*,
    1993 WL 259102 (Del. Ch. Jun. 30, 1993).............................................9

*Joubert v. ABN AMRO Mortgage Group (In re Joubert)*,
    411 F.3d 452 (3d Cir. 2005)...............................................................16

*Krauss v. State Farm Mut. Auto. Ins. Co.*,
    2004 WL 2830889 (Del. Super. Apr. 23, 2004) .....................................8

*Marrin v. Capital Health Sys., Inc.*,
    2015 WL 404783 (D.N.J. Jan. 29, 2015) .............................................11

*Moi v. Asset Acceptance LLC (In re Moi)*,
    381 B.R. 770 (Bankr. S.D. Cal. 2008) ...................................................16

*Mullane v. Midland Mortgage*,
    2021 WL 3021949 (D. Del. Jul. 16, 2021) ............................................1

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ........................................................... 14-15

*Organovo Holdings, Inc. v. Dimitrov*,
    162 A.3d 102 (Del. Ch. 2017).........................................................11

*Orthopaedic Associates of S. Delaware, P.A. v. Pfaff*,
    2018 WL 822020 (Del. Super. Feb. 9, 2018)...............................8, 10-11

*Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acquisition, LLC*,
    202 A.3d 482 (Del. 2019) ............................................................ 13-14

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008).............................................................6

*Shipman v. TD Bank, N.A.*,
    2013 WL 12443925 (D. Del. Mar. 30, 2013) ....................................6

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
    67 A.3d 330 (Del. 2013) ...............................................................12

*Simmons v. Abruzzo*,
    49 F.3d 83 (2d Cir. 1995)..............................................................7

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002).......................................................................6

*Taylor v. United States (In re Taylor)*,
    263 B.R. 139 (N.D. Ala. 2001).......................................................16

*Tenneco Auto., Inc. v. El Paso Corp.*,
    2007 WL 92621 (Del. Ch. Jan. 8, 2007)...................................... 9-10

## STATUTES

**Page(s)**

BANKRUPTCY CODE § 105.......................................................................16

**OTHER AUTHORITIES**

**Page(s)**

FED. R. CIV. P. 12(b)(6) .................................................................................... 6-7

Rule 8(a)(2) ........................................................................................................ 6-7

# I. INTRODUCTION

The Plan Trustee of the Achaogen Plan Trust ("Plaintiff"), as successor in interest to Debtor Achaogen, Inc. ("Achaogen"), alleges that Defendant Cipla USA Inc. ("Cipla") has breached two asset purchase agreements with Achaogen, and has also breached a purported oral obligation to purchase other Achaogen assets (defined as the "China Assets" in Plaintiff's Complaint). Plaintiff is wrong – Cipla has not breached either asset purchase agreement, and the purported "oral contract" cannot be enforced. But those issues are for another day. As to the present motion, in a misguided attempt to shock and awe, Plaintiff has asserted a hodgepodge of ten claims arising out of these alleged contractual breaches, including three separate tortious interference claims, a promissory estoppel claim, a claim for breach of the implied covenant of good faith and fair dealing, and claim for contempt of Court. Plaintiff has failed to plausibly allege any of these causes of action, and so each of these claims must be dismissed. Cipla accordingly respectfully requests that the Court dismiss, with prejudice, Count IV (Tortious Interference with Contract), Count V (Tortious Interference with Business Relations), Count VI, (Tortious Interference with Prospective Economic Advantage) Court VIII (Promissory Estoppel), Court IX (Breach of Implied Covenant of Good Faith and Fair Dealing), and Count X (Contempt for Willful Violation of Court Orders).

# II. BACKGROUND FACTS

Achaogen, a pharmaceutical company that developed drugs to fight antibiotic-resistant "superbugs," filed its Chapter 11 petition on April 15, 2019. Adversary Complaint for Damages ("Compl."), ¶¶ 1, 10.[1] At the time of Achaogen's Chapter 11 filing, it had developed two anti-

---

[1] As this proceeding is at the motion to dismiss stage, the Court treats the non-conclusory factual allegations of the Complaint as true. *See Mullane v. Midland Mortgage*, 2021 WL 3021949, at *1 (D. Del. Jul. 16, 2021). To be clear, however, Cipla disputes many of the factual allegations set forth in the Complaint.

infective drugs: (a) Plazomicin, which received FDA approval in June 2018, and (b) C-Scape, which was in the FDA Phase I approval process as of April 2019. *Id.*, ¶¶ 12-13.

## A. THE CHINA ASSETS

Following its entry into Chapter 11, Achaogen sought to auction both its Plazomicin and C-Scape assets, and on May 1, 2019, the Court entered a Bidding Procedures Order, governing auctions and bids therein. Compl., Ex. B. On June 3, 2019, Achaogen commenced an auction (the "June 3 Auction") for all of its non-C-Scape assets. *Id.*, ¶ 24. Cipla submitted an initial bid for the global rights to Plazomicin at the June 3 Auction (the "Global Rights"). *Id.*, ¶ 25 and Ex. C. While no party outbid Cipla for the Global Assets, Qilu Antibiotics Pharmaceutical Co., Ltd. ("Qilu") instead submitted a bid for a license to develop, commercialize, and manufacture Plazomicin in China, Hong Kong, Macau, and Taiwan (the "China Assets"). *Id.*, ¶ 26 and Ex. D. Thereafter, a third party, Altamont Pharma Fund II, LLC, also split its bid, so that it was bidding only for the Global Rights less the China Assets. *Id.*, ¶ 27. Achaogen took the position that these split bids collectively constituted an offer for the Global Rights that was higher than Cipla's bid. *Id.*, ¶ 28. Thus, during the June 3 Auction, Cipla elected to split its bid into two bids: one for the Global Rights, less the China Assets, and one for the China Assets themselves. *Id.*

After multiple rounds of bidding at the June 3 Auction, Cipla was the successful bidder for the Global Rights, subject to a license agreement with Qilu for the China Assets, and Qilu was deemed the successful bidder for the China Assets. Compl., ¶ 30. Cipla was deemed the backup bidder for the China Assets. *Id.* Following the June 3 Auction, Cipla and Achaogen entered into an Asset Purchase Agreement dated as of June 20, 2019 (the "Cipla Plazomicin Sale Agreement"), by which Cipla would purchase the Global Rights (less the China Assets). *Id.*, ¶ 34 and Ex. E.[2]

---

[2] Plaintiff's claims do not arise from the Global Rights.

That agreement was clear that, as of June 20, 2019, a license agreement had not been entered into with Qilu, but that Cipla would "negotiate in good faith and use commercially reasonable efforts" to finalize such an agreement "on terms reasonably acceptable to [Cipla]." *See* Compl., Ex. E, § 5.17(e). The Cipla Plazomicin Sale Agreement also contains multiple representations and warranties of Achaogen in Article 3, and several conditions precedent to closing on the sale of the Global Rights (less the China Assets), including: (a) the accuracy of all representations and warranties made by Achaogen; (b) the full performance of all pre-Closing covenants and obligations by Achaogen. *Id.*, Ex. E, § 6.1.

Following Cipla's and Achaogen's entry into the Cipla Plazomicin Sale Agreement, on July 23, 2019, the Court entered an Order (I) Approving the Sale of Certain Assets of the Debtor to Cipla USA Inc. Free and Clear of Liens, Encumbrances, Claims and Interests, (II) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Releases, and (III) Granting Related Relief (the "Cipla Sale Order"). Compl., ¶ 64 and Ex. K. As Plaintiff notes, Section 12 of the Cipla Sale Order provides that "Notwithstanding anything set forth in this Sale Order in connection with the China Assets, the rights of Qilu regarding the China Assets will be set forth in and governed by the Qilu License Agreement." *Id.*, ¶ 64 and Ex. K, § 12. But that Section also provides that, "if the Qilu License Agreement is not executed and the transactions contemplated thereunder are not consummated by October 15, 2019, Buyer may, at its sole discretion by giving written notice to the Debtor (the 'Back-Up Bid Termination Notice'), terminate its obligations as the Back-Up Bidder for purchasing the Greater China Assets." *Id.*

Both before and after entry into the Cipla Plazomicin Sale Agreement, Cipla attempted to engage in negotiations with Qilu and Achaogen regarding a potential Qilu license agreement. As the Complaint acknowledges, Cipla provided comments on a draft license agreement on June 17,

2019. Compl., ¶ 37. Qilu never provided a markup to that draft license agreement. Instead, on July 22, 2019, Qilu warned Achaogen that it might walk away from the China Assets, and on July 29, 2019, "determined to walk away from the transaction." Compl., ¶¶ 65-66.[3] It was thus apparent that any Qilu license agreement would not be consummated by October 15, 2019, or at any time. The next day, on July 30, 2019, Cipla informed Achaogen that it would not be closing on the China Assets either, as "there were characterizations made to it by Achaogen representatives both before and during the course of the [June 3] Auction regarding the potential value of the [China Assets] which were incorrect." *Id.*, ¶ 69, Ex. M. Cipla therefore formally withdrew its bid to purchase the China Assets, and on July 31, 2019, informed the Court of that fact. *Id.*, ¶¶ 69, 72.

## B. THE C-SCAPE ASSETS

Separately from the Global Rights and the China Assets, Achaogen held a separate auction for C-Scape on June 12, 2019 (the "June 12 Auction"). Compl., ¶ 41. At the June 12 Auction, Cipla was the successful bidder. *Id.*, ¶ 43. Eight days later, belying Plaintiff's claim that Cipla treated its winning bid as "little more than a placeholder," Cipla and Achaogen entered into a second Asset Purchase Agreement dated as of June 20, 2019 (the "Cipla C-Scape Sale Agreement"). *Id.*, ¶¶ 44-45, Ex. G. As with the Cipla Plazomicin Sale Agreement, the Cipla C-Scape Sale Agreement contained multiple representations and warranties of Achaogen. *Id.*, Ex. G, Article 3. Achaogen also covenanted in the Cipla C-Scape Sale Agreement that it would: (a) cause this Court to enter a Sale Order by June 24, 2019; and (b) consummate the Closing no later than June 28, 2019 (defined as the "Outside Date"). *Id.*, Ex. G, § 5.4(b). Like the Cipla Plazomicin Sale Agreement, the Cipla C-Scape Sale Agreement contained multiple conditions precedent to Closing, including the accuracy of all Achaogen representations and warranties, and the

---

[3] Accordingly, Plaintiff does not allege that Qilu entered into a license agreement for the China Assets. *See, e.g.,* Compl., ¶ 131 ("Achaogen was unable to reach agreement with Qilu on the Qilu License Agreement…").

performance of all pre-Closing covenants.  *Id.*, Ex. G, § 6.1.  If any condition set forth in Section 6.1 of the Cipla C-Scape Sale Agreement remained unfulfilled as of the Outside Date (*i.e.*, by June 28, 2019), Cipla had the right to terminate the agreement.  *Id.*, Ex. G, § 7.1(a)(ii).

A hearing was scheduled by this Court on June 24, 2019, to consider the Cipla C-Scape Sale Agreement.  Compl., ¶ 47.  However, just before that hearing, the United States government raised several issues relating to national security.  *Id.*  Accordingly, the June 24 hearing was adjourned, and the parties and the government sought to resolve the national security issues raised by the government.  Plaintiff admits that closing of the Cipla C-Scape Sale Agreement, therefore, did not take place by the Outside Date, thereby permitting Cipla to terminate pursuant to Section 7.1(a)(ii) of the contract.  Compl., ¶¶ 164-165.  Thereafter, Cipla exercised its contractual right, and terminated the Cipla C-Scape Sale Agreement.  *Id.*, ¶ 166.

### C.    PLAINTIFF'S COMPLAINT

On May 27, 2021, Plaintiff filed a ten-count Complaint against Cipla.  Plaintiff alleges that with regard to the China Assets, Cipla: (a) violated multiple Court orders; (b) breached an oral contract to perform as backup bidder to Qilu; (c) breached the Cipla Plazomicin Sale Agreement with regard to Cipla's obligation to negotiate a license with Qilu in good faith; (d) engaged in three separate species of tortious interference; (e) breached the duty of good faith and fair dealing by failing to negotiate a license agreement with Qilu in good faith; and (f) engaged in contempt of Court via violation of several sale-related Orders.  As to C-Scape, Plaintiff claims that Cipla: (a) breached the Cipla C-Scape Sale Agreement by failing to close under that agreement; (b) should be promissorily estopped from its failure to close; and (c) breached the covenant of good faith and fair dealing by failing to purchase the C-Scape Assets.  None of Plaintiff's claims have merit, and

all of the non-contractual claims set forth in Plaintiff's Complaint (Counts IV-VI and VIII-X) should be dismissed with prejudice at this time.

## III.    LEGAL STANDARDS

A complaint may be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is warranted where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Shipman v. TD Bank, N.A.*, 2013 WL 12443925, at *1 (D. Del. Mar. 30, 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. To avoid dismissal, the facts alleged must support a reasonable inference of liability that is stronger than a mere possibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotations omitted).

A complaint may also be dismissed under Rule 8(a)(2) if it fails to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(a)(2), "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008). A complaint may be dismissed for failure to comply with Rule 8(a)(2) where it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised." *DiGenova v. UNITE HERE Local 274*, Case No. 20-2724, 2021 WL 796418, at *1

(3d Cir. Mar. 2, 2021) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

## IV. FOR MULTIPLE COUNTS, THE COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(B)(6)

### A. All Three of Plaintiff's Tortious Interference Claims Must Be Dismissed.

Counts IV, V, and VI of Plaintiff's Complaint allege tortious interference with contract,

tortious interference with business relations, and tortious interference with prospective economic

advantage. All three of these Counts arise from identical allegations: that in negotiations with

Achaogen and Qilu relating to Qilu's potential license for the China Assets, Cipla engaged in bad-

faith negotiating tactics. Compl., ¶¶ 126, 138, 151. All three of these claims must be dismissed.

#### 1. *Count IV Fails to Plausibly Allege a Claim for Tortious Interference with Contract.*

Under Delaware law, "a plaintiff must establish the following elements to make a claim

for tortious interference with contract: "(1) a contract, (2) about which defendant knew and (3) an

intentional act that is a significant factor in causing the breach of such contract (4) without

justification (5) which causes injury." *Colbert v. Goodville Mut. Cas. Co.*, 2011 WL 441363, at

*1 (Del. Super. Jan. 31, 2011). Under Delaware law, "to succeed under [a tortious interference

with contract] theory, there must be an actual breach of a valid and enforceable contract." *Id.*

As stated above, Plaintiff's claim is based on alleged tortious interference with a license

contract with Qilu. But this claim fails for the most basic of reasons—there was no valid and

enforceable contract. As admitted by Plaintiff throughout its Complaint (and specifically relied

upon in Counts V and VI, which are discussed below), no license agreement with Qilu was ever

executed. *See, e.g.*, Compl., ¶ 128 (Qilu "refus[ed] to consummate the Qilu Agreement…"); ¶ 131

("Achaogen was unable to reach agreement with Qilu on the Qilu License Agreement…"); ¶ 140

("Achaogen was ultimately unable to reach agreement with Qilu…"); ¶ 154 ("Achaogen was

unable to reach agreement with Qilu…").  This undisputed fact is fatal to Plaintiff's tortious interference with contract claim.  *See Colbert v. Goodville Mut. Cas. Co.*, 2011 WL 441363, at *1 (Del. Super. Ct. Jan. 31, 2011) ("to state a tortious interference claim, a plaintiff must properly allege an underlying breach of contract."); *see also Goldman v. Pogo.com,* Inc., 2002 WL 1358760, at *4 (Del.Ch.2002) ("A claim of tortious interference with a contractual right requires [among other things] ... a contract, a breach of that contract, and an injury.").  Plaintiff admits that there was no contract to be breached, and therefore, Count IV must be dismissed.  Thus, while Plaintiff repeatedly uses a self-serving defined term in the Complaint of the "Qilu License Agreement," no such contract ever existed, as admitted repeatedly throughout Plaintiff's Complaint.  *See, e.g.*, Compl., ¶¶ 128, 131, 140, 154.  Plaintiff cannot contradict itself and manufacture facts to manufacture a claim.  *See Krauss v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2830889, at *7 (Del. Super. Apr. 23, 2004) (parties may allege alternative legal theories, but not alternative and contradictory facts).

2.    *Count V Fails to Plausibly Allege a Claim for Tortious Interference of with Business Relations.*

To establish a claim for tortious interference with a prospective business relations, a plaintiff must prove ***each*** of the following elements: "(1) the reasonable probability of a business opportunity; (2) the intentional interference by the defendant with that business opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of the defendant's privilege to compete or protect his business interests in a fair and lawful manner." *Orthopaedic Associates of S. Delaware, P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018) (granting motion to dismiss).  "To meet the intentional interference prong, a plaintiff must prove that the defendant's interference with the plaintiff's business opportunity was intentional and wrongful or improper." *Id.*  "When considering whether a defendant's actions were improper, the

Court must assess these actions in light of a defendant's privilege to . . . ***protect its business*** in a fair and lawful manner." *Id.* (emphasis added, internal quotation and alteration omitted). Because a defendant has the privilege of protecting its own business interests, a claim for interference with a prospective business relation is actionable only if the interference is wrongful or improper. *IBM Corp. v. Comdisco, Inc.*, 1993 WL 259102, at *22 (Del. Ch. Jun. 30, 1993). Importantly, a "defendant cannot interfere with its own contract." *Tenneco Auto., Inc. v. El Paso Corp.*, 2007 WL 92621, at *5 (Del. Ch. Jan. 8, 2007). Thus, there can be no liability for tortious interference unless the defendant is "a stranger to both the contract and the business relationship giving rise to and underpinning the contract." Here, Count V fails on several necessary elements, and therefore, must be dismissed.

*First*, "to meet the reasonable probability of a business opportunity prong, a plaintiff" must identify a specific party who was prepared to enter into a business relationship ***with the plaintiff*** but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." *Id.* (emphasis added). By Plaintiff's own allegations, it cannot meet this element because the business relationship was for the benefit of Cipla—***not*** Achaogen. Accordingly, rather than a stranger to the transaction, Cipla would be a beneficiary. Indeed, Plaintiff admits Qilu's sole access to the China Assets would be through a license agreement. Compl., ¶ 31. Plaintiff also admits that any such license agreement was to be ***assigned to and assumed by*** Cipla. *Id.*, ¶¶ 32, 34 ("Cipla would eventually become the ultimate licensor of the rights to Plazomicin in the Greater China Region . . . "). To avoid any doubt, Plaintiff admits that Achaogen was not negotiating on its own behalf, but merely serving "as the facilitator of discussions ***between Cipla and Qilu*** regarding the Qilu License Agreement." *Id.*, ¶ 36 (emphasis added); *see also id.*, ¶ 32 ("negotiation of the Qilu License Agreement required the participations of all three interested parties: Achaogen,

Qilu and Cipla."). By Plaintiff's own allegations, Cipla was no stranger to the transaction at issue, and therefore, Plaintiff cannot establish this necessary element. Moreover, by admitting that it was merely facilitating negotiations of an agreement that was ultimately to be between Cipla and Qilu, Plaintiff admits that Cipla did not interfere with its Plaintiff's prospective relationship, which was in fact to inure to Cipla, not Plaintiff. *Tenneco Auto., Inc.*, 2007 WL 92621, at *5.

*Second*, even setting aside this fatal flaw, Plaintiff cannot establish that Cipla improperly interfered with the potential business opportunity. Plaintiff repeatedly admits that any license agreement with Qilu—which was necessary for the disposition of the China Assets—was subject to and contingent upon finalizing an agreement "***on terms reasonably acceptable to [Cipla]*** . . . ." *Id.*, ¶ 35. Plaintiff cannot claim an improper interference while at the same time admitting that the transaction ***had to be acceptable to Cipla***. Yet, this is exactly what Plaintiff seeks to do. Its Complaint admits that the license agreement negotiations fell apart after Cipla sent its proposed draft to Qilu. *Id.*, ¶¶ 37-39. But Cipla was entitled, as Plaintiff's Complaint admits, to negotiate a deal that it found acceptable. Plaintiff does not allege, because it cannot, that Cipla was required to disregard its interests in negotiating the Qilu License Agreement and accept any terms hoisted upon it by Qilu. A tortious interference of a business relationship cannot occur when a defendant is, as the case is here, merely protecting its own business interests in a fair, lawful, and ***contractually permissible*** manner. *Orthopaedic Associates*, 2018 WL 822020, at *2. Cipla is not interfering with (its own) prospective business relationship by protecting its own rights through due diligence and negotiations.

*Third*, Plaintiff's claims of expectations of the closed business deal with Qilu are nothing more than conclusory speculations. For example, Plaintiff speculates that it was "highly likely" that Qilu would have consummated the purchase of the China Assets . . . ." Compl., ¶ 135. Plaintiff

then speculates that this "likely" transaction was interfered with by Cipla because Cipla "hope[d]" it could resell the China Assets to unnamed entities at some undefined time (which of course never occurred). *Id.* ¶ 139. These speculative and self-serving conclusions do not support a well-pled cause of action.

At bottom, Cipla merely exercised its rights to conduct due diligence and negotiate a potential license agreement with Qilu, as Plaintiff expressly admits Cipla was entitled to do. Cipla was no stranger to the transaction and indeed was an intended beneficiary. Moreover, with nothing more than conclusory speculations, Plaintiff cannot convert Cipla's rightful actions into a tortious interference claim. Plaintiff cannot establish the necessary elements of a tortious interference claim and Count V should be dismissed.

### 3. Count VI Fails to Plausibly Allege a Claim for Tortious Interference with Prospective Economic Advantage.

Count VI is essentially a restatement of Count V, as a claim for tortious interference with business relationships is interchangeable with a claim for tortious interference with prospective economic advantage. *Compare Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017) (detailing elements of tortious interference of prospective economic advantage claim) *with Orthopaedic Associates of S. Delaware, P.A.*, 2018 WL 822020, at *2 (detailing identical elements of tortious interference with business relations claims); *see also Marrin v. Capital Health Sys., Inc.*, 2015 WL 404783, at *6 (D.N.J. Jan. 29, 2015) (explaining that the claims are interchangeable).

Count V and Count VI rely upon the same allegations and fail for the same reasons discussed immediately *supra*. However, Plaintiff's pleading deficiencies are further underscored by its claim that Cipla interfered with Cipla's own transaction. Compl., ¶ 155 ("As a result of ***Cipla's*** tortious interference, ***Cipla*** ultimately backed out of its bid.") (emphasis added). As

detailed above, Cipla cannot tortiously interfere with its own transaction, much less itself. But aside from this glaring deficiency, Plaintiff again relies on pure speculation to support its claim: that "on information and belief," Cipla had "unhappiness," and engaged in an unspecified investigation into the Chinese marketplace. These are insufficient allegations to support a claim for tortious interference.

Because Count V and Count VI are interchangeable and rely upon identical elements and facts, Count VI fails for the same reasons as Count V.

### B. Count VIII Fails to Plausibly Allege a Claim for Promissory Estoppel.

Plaintiff's promissory estoppel claim is based on Cipla's alleged failure to close on the Cipla C-Scape Sale Agreement. *See* Compl., ¶¶ 174, 178 ("The Cipla C-Scape Sale Agreement is a valid and binding contact for Achaogen to sell C-Scape to Cipla … Achaogen detrimentally relied on Cipla's statement that it would close the Cipla C-Scape Sale Agreement."). This claim fares no better than Plaintiff's tortious interference claims relating to the China Assets.

To state a claim for promissory estoppel, a plaintiff must show by "clear and convincing evidence" that "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promise; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (citation omitted). "Promissory estoppel is applied to enforce a promise which is not supported by consideration, in other words, where there is no binding contract." *Constar, Inc. v. Nat'l Distribution Centers, Inc.*, 101 F. Supp. 2d 319, 323 (E.D. Pa. 2000). Thus, "when parties have formed an enforceable contract, relief under promissory estoppel claim is unwarranted." *Id.* (citation omitted); *see also SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013) (same).

Here, there can be no claim for promissory estoppel because Plaintiff's bases its support for the claim on a written contract—the same basis upon which it bases its breach of contract claims. *See, e.g.*, Compl., ¶ 173-174 (alleging that the "Cipla C-Scape Sale Agreement is a valid and binding contract . . . ."). Plaintiff specifically relies on the Cipla C-Scape Sale Agreement for its promissory estoppel claim—the same agreement it relies upon for its breach of contract claim under Count VII. Indeed, Plaintiff goes so far as to specifically incorporate by reference its allegations for breach of the C-Scape Sale Agreement into its claim for promissory estoppel. Compl., ¶ 171. Plaintiff cannot replead its breach of contract claim based on what it alleges is a valid and binding contract and also pursue a claim for promissory estoppel related to that same contract.

Even ignoring this deficiency, Count VIII relies upon pure speculation and cannot support a viable claim. For example, Plaintiff merely speculates with no support, "on information and belief," that unidentified and undated Cipla "representations and conduct" related to the C-Scape Sale Agreement made it appear that the agreement was "contingent upon Cipla receiving BARDA funding." Compl., ¶ 176. Moreover, Plaintiff concludes with no support that the value of C-Scape "deteriorated . . . as a result of the passage of time," but offers no basis to support this speculative conclusion. Count VIII must be dismissed.

### C. Count IX Fails to Plausibly Allege a Breach of the Implied Covenant of Good Faith and Fair Dealing.

Count IX is based on Cipla's alleged conduct relating to both the China Assets and C-Scape. As with Plaintiff's other non-contract claims, it is wholly duplicative of Plaintiff's contract claims, and must be dismissed.

The implied covenant of good faith and fair dealing "is a limited and extraordinary legal remedy." *Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acquisition, LLC*, 202

A.3d 482, 506-07 (Del. 2019) (quoting *Nemec v. Shrader,* 991 A.2d 1120, 1125-28 (Del. 2010) (noting that the application of the implied covenant is a "cautious enterprise"). The implied covenant "does not apply when the contract addresses the conduct at issue," but only "when the contract is truly silent" concerning the matter at hand. *Oxbow Carbon*, 202 A.3d at 507 (internal quotation marks and citations omitted); *see also Collab9, LLC v. En Pointe Techs. Sales, LLC*, 2019 WL 4454412, at *3 (Del. Super. Sept. 17, 2019) (granting motion to dismiss implied covenant claims because they were duplicative of breach of contract claims). In the rare occasions that the Court invokes the implied covenant, it will only do so in a manner that "does not contradict, the purposes reflected in the express language of the contract." *Alliance Data Sys. Corp. v. Blackstone Cap. P'rs V L.P.,* 963 A.2d 746, 770 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009). Accordingly, "Delaware courts rightly employ the implied covenant sparingly when parties have crafted detailed, complex agreements…." *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *7 (Del. Ch. Apr. 20, 2009). The implied covenant "cannot be used to circumvent the parties' bargain, or to create a free-floating duty unattached to the underlying legal documents" and a party cannot "base a claim for breach of the implied covenant on conduct authorized by the agreement." *See Lonergan*, 5 A.3d at 1017; *Nemec*, 991 A.2d at 1125-26 (internal quotation marks and citation omitted).

Here, Plaintiff's Complaint generally and Count IX specifically allege Plaintiff's displeasure that Cipla terminated the Cipla Plazomicin Sale Agreement and the Cipla C-Scape Sale Agreement. However, both agreements specifically grant Cipla a right of termination if, among other things, conditions precedent are not met, or Achaogen breached its representations, warranties, or covenants. *See* Compl., Exs. E & G, § 7.1, *et seq.* Indeed, Plaintiff's Complaint acknowledges this termination right, and includes allegations regarding Cipla's termination of the

Cipla Plazomicin Sale Agreement based on alleged false statements by Achaogen. *Id.*, ¶ 69 & Compl., Ex. M. Thus, there is no gap to be filled by the implied covenant under these circumstances. *See Nemec*, 991 A.2d at 1128 ("A party does not act in bad faith by relying on contract provisions for which that party bargained where doing so simply limits advantages to another party."). Instead, Plaintiff's claims rise and fall on whether Cipla breached its contractual obligations by terminating the Agreements pursuant to Article 7. While Cipla will demonstrate at a later stage in this case that both terminations were justified and contractually permissible, these issues do not create nor support an independent claim for breach of the implied covenant of good faith and fair dealing.

Moreover, as with several of its other Counts, Plaintiff's implied covenant claim is based upon multiple layers of speculation. Indeed, the most Plaintiff musters is that "on information and belief," Cipla delayed negotiations regarding a potential Qilu license agreement "to determine the resale value of the China Assets." Compl., ¶ 186. But Plaintiff's "information and belief" claim is based on the speculation that Cipla's "delay tactics *would likely* have resulted in Qilu withdrawing its bid . . . and Cipla *having the opportunity* to sell the asset . . . ." *Id.* (emphasis added). Of course, Plaintiff offers nothing in its complaint to support such speculations. Speculative allegations regarding what Cipla may have intended, which in turn could have caused a potential result, for the mere possible opportunity of an unrealized outcome, are not well-pled, and cannot support a claim for the breach of the implied covenant of good faith and fair dealing.

### D. Count X Fails to Plausibly Allege A Claim for Contempt of Court.

Finally, Plaintiff asserts a claim for contempt of Court, seeking compensatory and, tellingly, punitive damages. Plaintiff's contempt allegations are essentially identical to its contract claims related to the Cipla Plazomicin Sale Agreement: that Cipla interfered with the negotiations underlying the potential license agreement with Qilu, and then wrongly failed to purchase the

China Assets after negotiations for Qilu's potential license agreement fell apart. *Compare* Compl., ¶¶ 209, 215-216 *with* Compl.,¶¶ 90, 104, 116.

Plaintiff seeks to recover for contempt pursuant to Section 105 of the Bankruptcy Code. *See id.*, ¶ 220. But multiple Courts, including the Third Circuit, have held that Section 105 does not give rise to a private right of action. *See, e.g.*, *Joubert v. ABN AMRO Mortgage Group (In re Joubert)*, 411 F.3d 452, 454-55 (3d Cir. 2005) (holding that Section 105 does not afford a private cause of action, and affirming dismissal of cause of action brought pursuant to Section 105); *Taylor v. United States (In re Taylor)*, 263 B.R. 139, 151-152 (N.D. Ala. 2001) ("It is error for the court to rely on § 105(a) to confer a private right of action to collect damages."); *Moi v. Asset Acceptance LLC (In re Moi)*, 381 B.R. 770, 773 (Bankr. S.D. Cal. 2008) ("Because the powers of § 105 are reserved to the Court, and do not grant a private right of action to a party in interest … the defendant's motion to dismiss plaintiff's second claim for relief [for contempt of court] is granted."); *Davis v. Eagle Legacy Credit Union (In re Davis)*, 430 B.R. 902, 907 (Bankr. D. Colo. 2010) (Section 105 does not afford a private right of action). Plaintiff cannot assert an affirmative claim for contempt, and Count X must be dismissed.

V. **CONCLUSION**

Cipla respectfully requests that the Counts IV, V, VI, VIII, IX, and X of the Complaint be dismissed in their entirety and with prejudice

Dated: August 6, 2021
Wilmington, Delaware

Respectfully submitted,

By: */s/ Jeremy W. Ryan*
    Jeremy W. Ryan (No. 4057)
    John A. Sensing (No. 5232)
    Jesse L. Noa (No. 5973)
    **POTTER ANDERSON & CORROON LLP**
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Telephone:  (302) 984-6000
    Facsimile:   (302) 658-1192
    Email: jryan@potteranderson.com
           jsensing@potteranderson.com
           jnoa@potteranderson.com

    *Attorneys for Defendant Cipla USA, Inc.*