# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Achaogen, Inc.<br><br>    Debtors. | Chapter 11<br><br>Case No. 19-10844 (BLS) |
| Edward E. Neiger, not individually but as Plan Trustee of the Achaogen Plan Trust,<br><br>    Plaintiff,<br> v.<br><br>Cipla USA, Inc.<br><br>    Defendant. | Adv. Proc. No. 21-50479 (BLS)<br><br>**Re: Adv. Docket Nos. 1, 41** |

## REPLY BRIEF IN SUPPORT OF CIPLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

Dated: April 8, 2024

Jeremy W. Ryan (No. 4057)
John A. Sensing (No. 5232)
Jesse L. Noa (No. 5973)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
   jsensing@potteranderson.com
   jnoa@potteranderson.com
   abrown@potteranderson.com

*Attorneys for Cipla USA, Inc.*

# TABLE OF CONTENTS

                                                                                             **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ................................................................................................................................. 2

    I.       The Applicable Provisions Cap Any Liability to Just the Deposits .............................. 2

           A.       The Bidding Procedures Order ........................................................................ 2

           B.       The Plazomicin Sale Agreement and Sale Order ............................................ 2

           C.       The C-Scape Sale Agreement ......................................................................... 3

    II.      All Conditions for the Liquidated Damages Provision of the Plazomicin Sale Agreement Have Occurred ................................................................................................. 3

    III.     The Liquidated Damages Provision of the Bidding Procedures Limits Cipla's Damages to Cipla's $350,000 Deposit .......................................................................... 6

    IV.     Plaintiff Has Already Conceded that the Plazomicin Sale Agreement is Relevant to this Dispute .............................................................................................. 7

    V.      Plaintiff's Damages for Its Tort Claims Are the Same as Its Damages for Its Contractual Claims ....................................................................................................... 8

    VI.     The Liquidated Damages Provision of the C-Scape Sale Agreement Applies Here .............................................................................................................................. 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anthony P. Miller Inc. v. Wilmington Housing Auth.*,
   165 F. Supp. 275 (D. Del. 1958) ............................................................................................9

*Bolz v. State Farm Mut. Auto. Ins. Co.*,
   52 P.3d 898 (Kan. 2002) ..........................................................................................................9

*Brasby v. Morris*,
   2007 WL 949485 (Del. Super. Mar. 29, 2007) ........................................................................8

*DCR Inc. v. Peak Alarm Co.*,
   663 P.2d 433 (Utah 1983) ........................................................................................................8

*Flint & Walling Mfg. Co. v. Beckett*,
   79 N.E. 503 (Ind. 1906) ...........................................................................................................8

*J.A. Jones Const. Co. v. City of Dover*,
   372 A.2d 540 (Del. Super. 1977) .............................................................................................9

*Libeau v. Fox*,
   880 A.2d 1049 (Del. Ch. 2005) ................................................................................................9

*In re Quintus Corp.*,
   353 B.R. 77 (Bankr. D. Del. 2006) ....................................................................................7, 10

*St. Francis Reg'l Med. Ctr. v. Blue Cross Blue Shield of Kansas, Inc.*,
   810 F. Supp. 1209 (D. Kan. 1992) ...........................................................................................9

*Tameny v. Atlantic Richfield Co.*,
   610 P.2d 1330 (Cal. 1980) .......................................................................................................8

*In re Welded Constr.*,
   605 B.R. 35 (Bankr. D. Del. 2019) ........................................................................................10

STATUTES

Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE ...................................................................1

Rule 7056 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE .....................................................1

Defendant, Cipla USA, Inc. ("Cipla" or "Defendant"), by and through its undersigned counsel, hereby submits this Reply in support of its motion [D.I. 38] (the "Motion") and opening brief [D.I. 39] (the "Opening Brief")[1] for partial summary judgment as to liability pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rule 7056 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").

**PRELIMINARY STATEMENT**

Plaintiff's Opposition misunderstands the key provisions of the documents at issue. Plaintiff does not contest that all of the relevant documents in this case contain liquidated damages provisions or that Cipla paid the required deposits these provisions reference, which Plaintiff still has today. Rather, Plaintiff primarily contends that the numerous liquidated damages provisions only come into play when an order of the Court approves a sale of the China Assets to Cipla. That is exactly what happened. The Plazomicin Sale Agreement is clear that Cipla would own the China Assets, subject to the licensing rights. The Court approved this sale. Plaintiff concedes as much in its Complaint and its Opposition. Plaintiff does not contend that the cap provisions have otherwise been amended, altered or rescinded. This argument is nothing more than a red herring. Setting aside the lack of merit in Plaintiff's Complaint, for this stage of the proceedings, the plain language of the limitation provisions makes clear that the deposits are Plaintiff's sole and exclusive remedy in this case.

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to them in the Motion or Opening Brief.

# ARGUMENT

I. **The Applicable Provisions Cap Any Liability to Just The Deposits**

  A. *The Bidding Procedures Order*

The Bidding Procedures Order, which was drafted by Debtors not Cipla, makes clear that the deposits are the sole remedy against all bidders except for a stalking horse bidder. Specifically, the Bidding Procedure Order provides in clear terms:

> Following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder, *if the Successful Bidder fails to consummate the Sale*, and such failure is the result of a breach by the Successful Bidder of its obligations under its Qualified Bidder Purchase Agreement, the Successful Bidder's (other than the Stalking Horse Bidder, as applicable) *Good Faith Deposit shall be forfeited to the Debtor as liquidated damages in accordance with the terms of such agreement*, and if the Successful Bidder is the Stalking Horse Bidder, as applicable, the Debtor shall have the right to pursue all of its rights and remedies against the Stalking Horse Bidder in accordance with the terms of such Stalking Horse Bidder Purchase Agreement, as applicable. If the Back-Up Bidder is later designated by the Debtor to be the Successful Bidder, the foregoing shall be read to apply to the Back-Up Bidder (and its guarantors, if any) in its capacity as the Successful Bidder.

Bidding Procedure Order, Article X, p. 16 (emphasis added). To avoid any doubt, this Section is titled "Failure to Consummate Purchase." *Id.* This section, which again is not Cipla's language, specifically limits relief to the Good Faith Deposit, preserving all other remedies only in the case of a stalking horse bidder, which Cipla was not. Moreover, the last sentence of this Section specifically applies the limitation to the Back-Up Bidder as well.

  B. *The Plazomicin Sale Agreement and Sale Order*

The Plazomicin Sale Agreement provides in unambiguous terms that:

> Following entry by the Bankruptcy Court of an order authorizing the sale to the Purchaser either as the Successful Bidder or Back-Up Bidder, *the Deposit shall be forfeited to the Seller as liquidated damages if either (i) the Purchaser fails to consummate the sale* as the result of a breach by the Purchaser of any of its obligations under this Agreement or (ii) this Agreement is terminated pursuant to Section 7.1(a)(vi); provided, that the Seller is not in material breach of its obligations under Section 5.17(f).

2

Plazomicin Sale Agreement, § 7.2(b) (emphasis added). Section 7.2(a) further clarifies that in the event Section 7.2(b) is triggered, "the forfeiture of the Deposit as liquidated damages *shall be the sole and exclusive remedy*". *Id.*, § 7.2(a) (emphasis added).

As Plaintiff's Complaint admits, the Sale Order for the Plazomicin Sale Agreement was entered on July 23, 2019. Compl., ¶ 64 ("***The Court approved the Cipla Plazomicin Sale Agreement on July 23, 2019 as memorialized in the Order*** (I) Approving the Sale of Certain Assets of the Debtor to Cipla USA Inc. Free and Clear of Liens, Encumbrances, Claims and Interests, (II) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief (the "Cipla Sale Order") [D.I. 371].") (emphasis added). Thus, by its plain language and Plaintiff's own admissions, Section 7.2's cap applies.

### C. *The C-Scape Sale Agreement*

Like the Plazomicin Sale Agreement, the C-Scape Sale Agreement contains a similar cap on damages limiting relief to solely the $50,000 deposit as liquidated damages. C-Scape Sale Agreement, § 7.2(b); *see also id.*, § 2.3 (deposit is $50,000).

### II. All Conditions for the Liquidated Damages Provision of the Plazomicin Sale Agreement Have Occurred

Having relied heavily on the Cipla Plazomicin Sale Agreement and Cipla Sale Order throughout its Complaint[2] in which Plaintiff admits the Cipla Sale Order "approved the Cipla Plazomicin Sale Agreement on July 23, 2019," Plaintiff *now* tries to distance itself from that admission because it acknowledges the triggering of Section 7.2 of the Plazomicin Sale Agreement. As part of this ploy, Plaintiff *now* claims, quite incredibly, that its repeated use of its

---

[2] Indeed, Plaintiff's Complaint cites the Cipla Sale Order 30 times and uses the term Plazomicin Sale Agreement over 20 times.

3

own defined term "Plazomicin Sale Agreement" "is somewhat misleading". *See* Opp. at 9 ("At the outset, *Plaintiff's* choice … is somewhat misleading.") (emphasis added); *see, e.g.*, Compl. at ¶¶ 32, 34-35, 45, 64, 125, 130, 137, 146. The Plazomicin Sale Agreement was aptly titled in the Complaint because the Plazomicin Sale Agreement defines "Purchased Assets" as "***all*** of the properties and assets of the Seller relating to the Plazomicin Business as of the Closing Date, free and clear of all Liens and Claims other than the Assumed Liabilities and the China License Rights…." Plazomicin Sale Agreement, §2.1 (emphasis added). With, as Plaintiff admits, the Cipla Sale Order "*approv[ing] the Cipla Plazomicin Sale Agreement*," (Compl., ¶ 64), Section 7.2(b) became effective and there is no argument that section 7.2(b) was ever amended, rescinded, or nullified.

The only thing "misleading" is Plaintiff's assertion that the cap as it relates to the deposit for the China Asset is somehow inapplicable. *See* Opp., at 9-10. To support this fiction, Plaintiff claims that the China Assets were not purchased as part of the Plazomicin Sale Agreement and that Qilu would have purchased the China Assets. *See id*. This fundamentally misreads the Plazomicin Sale Agreement under which Cipla would ***own*** the China Assets, subject to a ***license*** agreement with Qilu. The Court need not take Cipla's word for it and can look to Plaintiff's own Complaint for this admission. *See* Compl., at ¶¶ 29, 31 ("Cipla risked an outcome whereby it would be obligated to purchase the Global Rights ***subject to a license for the China Assets***.") (emphasis added). Thus, contrary to Plaintiff's about face to avoid the liability caps, Qilu did not bid for the China Assets, it bid for a license to use the China Assets. *See id.*, at ¶ 31. Cipla's rights in the China Assets were effective on July 23, 2019, when the Court entered the Cipla Sale Order. *Id.*, at Ex. B.

But Plaintiff knows all of this. They admit as much in the Complaint. *See id.*, at ¶ 35 ("Cipla's involvement and input was essential to the consummation of the Qilu License Agreement

*as it was now the holder of the Global Rights* (subject to the Debtor's rights to license the China Assets) following the consummation of the Cipla Plazomicin Sale Agreement and eventual *licensor* of the China Assets to Qilu.") (emphasis added). This is why the Plazomicin Sale Agreement states that Cipla was paying a deposit of $350,000 as required under the Bidding Procedures in connection with the licensing of the China Assets. *See* Plazomicin Sale Agreement, at § 2.6. That is why Plaintiff wrote in the Complaint that the Cipla Sale Order "further implement[ed] [Cipla's] obligations as Backup Bidder for the China Assets." Compl., at ¶ 69. To avoid any doubt, Plaintiff specifically admits that "Qilu was to receive a perpetual, irrevocable, exclusive, and royalty-free *license*, with a right to grant sublicenses for the China Assets." *Id.*, ¶ 31 (emphasis added). Of course, Cipla cannot license what it does not own. Plaintiff only now asserts that there was no sale of the China Assets approved by the Court to try and create an ambiguity in the liquidated damages provisions at issue.

Therefore, any condition precedent to the liquidated damages provisions were satisfied at that time. Importantly, paragraph 6 of the Cipla Sale Order provided that "if any of the provisions of this Sale Order are hereafter … modified … by a subsequent order of the Bankruptcy Court … such … modification … shall not affect the validity and enforceability of any sale, transfer or assignment under the Sale Agreement." That the sale documents may have been later amended by a subsequent order of the Court is irrelevant to whether any condition precedent of the liquidated damages provision was satisfied and whether the deposit for the China Assets is Plaintiff's sole remedy as expressly stated in the agreement.

Plaintiff heavily relies on this false premise for arguing that the liquidated damages provisions in the Bidding Procedures, the Qualified Bidder Purchase Agreement, the Plazomicin Sale Agreement, and the C-Scape Sale Agreement are not applicable because a condition precedent

5

to their taking effect has not been satisfied. *See* Opp., at 6-7, 8, 9-10, 16. This argument is an admission that these provisions limit the damages to the applicable deposits, with the only fallback argument being the reimagining that the condition precedent never occurred—which as noted above it did occur and Plaintiff has repeatedly admitted that fact.

### III. The Liquidated Damages Provision of the Bidding Procedures Limits Cipla's Damages to Cipla's $350,000 Deposit

Plaintiff makes two arguments with respect to the liquidated damages clause in Section X of the Bidding Procedures. First, that it is not effective because the Court never approved a sale of the China Assets to Cipla. *See* Opp., at 6-7. As explained above, this argument is simply incorrect, and Plaintiff has conceded this point throughout this case. Second, Plaintiff argues that Section 7.2 of Cipla's Qualified Bidder Purchase Agreement provides Plaintiff with the right to seek damages in excess of the deposit in contravention of the clear language in the Bidding Procedures. *See* Opp., at 8. Plaintiff relies on the interplay between Section 7.2 (a) (reserving to the Terminating Party all of its rights and remedies) and (b) (saying without in any way limiting the foregoing, if the Purchaser fails to consummate the sale as a result of Purchaser's breach, then the deposit constitutes liquidated damages) to argue that Plaintiff is entitled to recover damages in excess of the deposit. *See id.*

At the outset, Section 7.2(a) applies to Cipla's rights in this matter, as Cipla was the "Terminating Party." Plaintiff concedes as much in the Complaint. *See* Compl., at ¶ 69 ("Cipla's counsel informed Achaogen that it 'will not be proceeding to close on the [] China Assets.'"). That Plaintiff contests the validity of Cipla's termination is irrelevant to the applicability and clear language of this provision.

Even if this language does apply to Plaintiff, the clear interplay of these two sections is that Plaintiff's rights are reserved as limited by the deposit cap. Thus, the applicable language does

not broaden any rights but simply preserves the cap. Plaintiff's interpretation of this section is contrary to black letter law on contract interpretation that courts are to interpret contracts to give meaning to each provision. *See, e.g., In re Quintus Corp.*, 353 B.R. 77, 87 (Bankr. D. Del. 2006) ("In interpreting a contract, the Court should strive to avoid an interpretation where any provision is rendered meaningless or mere surplusage."). Plaintiff is asking the Court to ignore the clear language of Section 7.2(b) that the deposit "shall be forfeited to the Sellers as liquidated damages." If this remedy is not exclusive, then what meaning does this provision have? Plaintiff does not, and cannot, say.

Plaintiff's paragraph addressing the starkly different language in the Bidding Procedures for the stalking horse bidder gives the game away. Plaintiff contends the different language is because "stalking horse bidders are typically in a position to negotiate heightened bid protections … such as waiving the requirement for a deposit" and that "it was logical for the Debtor to refrain from setting forth its remedies vis-á-vis a potential stalking horse bidder in the Bidding Procedures." *See* Opp., at 8. Exactly. Plaintiff's remedies against Cipla *were* set forth in the Bidding Procedures in the form of the deposit, whereas Plaintiff's remedies against a stalking horse bidder were specifically broader and included all remedies being reserved.

### IV. Plaintiff Has Already Conceded that the Plazomicin Sale Agreement is Relevant to this Dispute

Despite citing it over 20 times in its Complaint, Plaintiff now argues that the Plazomicin Sale Agreement is not applicable, and even if it were, the liquidated damages provision is not effective. *See* Opp., at 9-10. As discussed above, Plaintiff is changing positions in an attempt to avoid the clear language of the liquidated damages provision in the Plazomicin Sale Agreement. Indeed, Plaintiff's complaint purports to assert a breach of contract claim for the China Assets based in part on Cipla's obligations under the Plazomicin Sale Agreement. *See* Compl., at ¶¶ 94,

Plaintiff has thus conceded this agreement is relevant to this dispute. Plaintiff now seeks the benefit of asserting breach under this agreement, without being held to the liability limitations of the liquidated damages clause in the agreement.

V. **Plaintiff's Damages for Its Tort Claims Are the Same as Its Damages for Its Contractual Claims**

Plaintiff asserts that its tort claims save Plaintiff from the clear liability limitations in the relevant liquidated damages provisions. *See* Opp., at 12-14. As stated in Cipla's Opening Brief, Plaintiff has only asserted economic damages for its tort claims that overlap with, and are covered by, its alleged damages for its contractual claims. *See Brasby v. Morris*, 2007 WL 949485, at *6-7 (Del. Super. Mar. 29, 2007) ("The economic loss rule is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged… The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law.").

The cases Plaintiff cites to support this argument are clearly distinguishable. In *DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 435 (Utah 1983), as Plaintiff points out, the court held that "[a] party who breaches his duty of due care toward another may be found liable to the other in tort, even where the relationship giving rise to such a duty originates in a contract between the parties." However, the court so held because "[t]his Court has applied the above negligence rules specifically to cases such as this which involve contracts for services." *Id*. at 436. That is obviously not the case here. Likewise, both *Tameny v. Atlantic Richfield Co.,* 610 P.2d 1330 (Cal. 1980) and *Flint & Walling Mfg. Co. v. Beckett,* 79 N.E. 503 (Ind. 1906*)* are not liquidated damages cases.

As Cipla highlights in its Opening Brief, the Plazomicin Sale Agreement and the Bidding Procedures broadly cover the situation where the sale is not consummated. Opening Br., at 11. In

such a case, the Plazomicin Sale Agreement and the Bidding Procedures are clear that the ***sole remedy*** is the deposit. Plaintiff cannot attempt to use artful pleadings by alleging a tort claim to surmount the clear and unambiguous liability caps.

Plaintiff's public policy argument is similarly without merit. Each of the cases Plaintiff cites deal with inapposite facts, including that they were about contracts for services. *See J.A. Jones Const. Co. v. City of Dover*, 372 A.2d 540 (Del. Super. 1977); *Anthony P. Miller Inc. v. Wilmington Housing Auth.*, 165 F. Supp. 275 (D. Del. 1958). Additionally, these cases stand for the proposition that parties are not able to limit their liability in tort when their liability arises from fraud. The contracts at issue here are not service contracts and Plaintiff has not alleged fraud in this case. Plaintiff does not identify a single case where fraud is not alleged and a limitation of liability in a non-service contract entered into by sophisticated parties with counsel was invalidated on public policy grounds.

Contrary to Plaintiff's argument, absent a showing that there is an overwhelming public policy reason to void the liquidated damages provision (*i.e.*, unconscionability or fraud—none of which are alleged here), then public policy strongly favors *enforcement*. *See Libeau v. Fox*, 880 A.2d 1049, 1056-57 (Del. Ch. 2005) ("As our courts have recognized: … If there is one thing more than any other which public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting and that this freedom of contract shall not lightly be interfered with.") (internal citations and quotations omitted). "'[P]ublic policy encourages the freedom to contract, which should not be interfered with lightly.'" *Bolz v. State Farm Mut. Auto. Ins. Co.*, 52 P.3d 898, 905 (Kan. 2002) (quoting *St. Francis Reg'l Med. Ctr. v. Blue Cross Blue Shield of Kansas, Inc.*, 810 F. Supp. 1209, 1218 (D. Kan. 1992)). As laid out in Cipla's Opening Brief, the liquidated damages provisions here in all relevant agreements broadly cover the scenario

9

where the sale is not consummated. Opening Br., at 11. Both the Bidding Procedures and Plazomicin Sale Agreement are clear that where the sale is not consummated, liquidated damages are the *sole* and *exclusive* remedy. *Id.* Therefore, as detailed in the Opening Brief, Plaintiff cannot rely on purported tort claims to avoid the liability caps.

## VI. The Liquidated Damages Provision of the C-Scape Sale Agreement Applies Here

Plaintiff concedes that with regard to the C-Scape Sale Agreement, Plaintiff has only asserted contractual claims. *See* Opp., at 15. Instead, Plaintiff makes two arguments that the liquidated damages clause does not apply. First, that this provision requires the entry of an order approving the sale of C-Scape to Cipla in order to apply. *See id.* Plaintiff would have this Court interpret this contract to allow Plaintiff to seek greater damages for an unauthorized sale than an authorized one. That would be an absurd result and not what the parties intended as evidenced by every document possibly applicable to this dispute containing a liquidated damages provision. *See In re Welded Constr.*, 605 B.R. 35, 40 (Bankr. D. Del. 2019) ("While a contract's plain meaning should be the point of departure, a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.") (internal quotations omitted).

Second, Plaintiff makes the same argument it made for the Qualified Bidder Purchase Agreement, that Section 7.2(a) essentially erases Section 7.2(b). *See* Opp. at 16. As discussed, above, this language merely reserves Plaintiff's rights as they exist with respect to the deposit cap. Plaintiff asks the Court to ignore the clear language of Section 7.2(b). Again, this is not a reasonable interpretation of the contract. *See Quintus Corp.*, 353 B.R. at 87.

**CONCLUSION**

For the reasons stated herein and in Cipla's Opening brief, Cipla respectfully requests the Court enter an Order granting Cipla partial summary judgment as to liability. A decision to the contrary risks creating a chilling effect in the market for bankruptcy asset sales, as buyers will be on notice that downside protections in sale contracts will not be enforced as written.

Dated: April 8, 2024
Wilmington, Delaware

Respectfully submitted,

*/s/ Jesse L. Noa*
Jeremy W. Ryan (No. 4057)
John A. Sensing (No. 5232)
Jesse L. Noa (No. 5973)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
jsensing@potteranderson.com
jnoa@potteranderson.com
abrown@potteranderson.com

*Attorneys for Cipla USA, Inc.*